WILLIAM M. HALL vs. DANIEL CRESSEY.

Cumberland.    Opinion March 1, 1899.

*Deed.    Estate Tail.    Vested Remainder.    Children. R. S., c. 73, § 4.*

A father conveyed certain real estate to his two sons Stephen and George " their heirs and assigns forever, one-third to Stephen and two-thirds to George." The habendum was to the same effect. Among the provisions in the deed were these: " Said Stephen and George to come into possession of said property after the decease of me and my wife Margaret, and not before. This deed is to take effect and go into operation on the decease of me and my wife, and not before; and if my son Stephen die without children, then Stephen's third part is to go to my son George." . Stephen died leaving an illegitimate child, but no legitimate children.

*Held;* that the estate in Stephen created by the deed was a vested remainder in fee simple, determinable upon the contingency of Stephen's dying without legitimate children, which contingency happened, and therefore that the title vested in George and passed from him to his grantee.

*Held;* that the word " children " in the deed is to be construed as meaning legitimate children.

See *Watson* v. *Cressey,* 79 Maine, 381.

AGREED STATEMENT OF FACTS.

Real action submitted to the law court on facts agreed by the parties and which are stated in the opinion.

*F. M. Ray,* for plaintiff.

*Wm. Lyons,* for defendant.

SITTING: PETERS, C. J., FOSTER, WHITEHOUSE, WISWELL, STROUT, SAVAGE, JJ.

SAVAGE, J. In 1847, James McIntosh conveyed certain real estate in Gorham to his two sons Stephen and George, " their heirs

and assigns forever," one-third to Stephen and two-thirds to George. The conveyance was expressed to be on certain conditions subsequent, all of which have since been performed. Among the provisions in the deed were these: "Said Stephen and George to come into possession of said property after the decease of me and my wife Margaret and not before." . . . . "This deed is to take effect and go into operation on the decease of me and my wife and not before; *and if my son Stephen die without children, then Stephen's third part is to go to my son George.*" This same deed was before the court in *Watson* v. *Cressey,* 79 Maine, 381, and its general effect was considered. It was there held that the grantees took vested remainders in the granted premises. The case at bar presents a new issue, and the controversy arises concerning the present ownership of "Stephen's third part."

Stephen died in 1881, having never married, but leaving an illegitimate child to whom he had given statutory recognition. The plaintiff claims title through mesne conveyances from Stephen; the defendant claims through mesne conveyances from George. The rights of the parties depend upon the proper construction to be given to the clause in the deed above quoted, "and if my son Stephen die without children then Stephen's third part is to go to my son George."

The plaintiff contends in the first place that Stephen took a vested remainder in tail in the demanded premises; that upon the death of his father and mother, he became seized as tenant in tail; and that by subsequent conveyance the entail was barred, and the title in fee simple passed to Stephen's grantee, and so on to the plaintiff. R. S., c. 73, § 4. On the other hand, the defendant's contention is that Stephen took a vested remainder in fee simple, determinable upon a contingency, namely the death of Stephen without children; and that upon the death of Stephen without legitimate children, the title passed to George, and so on to the defendant.

The plaintiff contends in the second place, that if Stephen's remainder was not an estate in tail, then inasmuch as Stephen died leaving surviving him a child born out of wedlock, he did not in legal contemplation "die without children," and so the contingency

provided for in the deed did not happen; and in that event, the plaintiff says that Stephen took only a life estate and that the remainder in fee passed by inheritance to his illegitimate child, who had then been legitimated and who subsequently conveyed to the plaintiff.

The first important question is: did Stephen " die without children ?" Unless he did the defendant has no title in any event. By the common law, a bastard was filius nullius. He possessed no inheritable blood. The sins of the father were visited upon the child. Modern sentiment as expressed in modern statutes is more merciful to the unfortunate offspring of illicit intercourse. In this state, as in most others, by pursuing statutory methods, a bastard may be legitimated and may acquire rights of inheritance, and some or all of the usual consequences of consanguinity. So it was in the case at bar. Stephen gave his daughter statutory recognition. But that conferred only statutory rights and privileges. We are not concerned with the status of this child under a statute, but are endeavoring to ascertain the legal meaning of the word "children" in a deed. We do not perceive how that meaning can be enlarged in this case; nor how the interpretation of the word can be aided by reference to a statutory condition which was created many years after the deed was executed. Unless there is something in this deed,—and there is not,—to show that the grantor contemplated that his son Stephen would become the father of a bastard child, and intended that child to be included in the term "children," we must give to the word its ordinary, common law signification. The authorities are to the effect that the word " child " in a will or deed means a legitimate child. In *Bolton* v. *Bolton*, 73 Maine, 299, the late Judge VIRGIN, after stating that the word "widow" in a life insurance policy meant the lawful widow, used the following language: " The foregoing rules find numerous illustrations in the construction of wills wherein legacies and devises are given to a 'child' or 'children' of some person named, and such person has legitimate and illegitimate child or children, in which case the legitimate and not the illegitimate issue take. The word 'children' it is said means prima facie legitimate

children, as much as if the word 'legitimate' were written before it." An illegitimate child was not permitted to take under a bequest in a will which gave a legacy to "nephews" as a class, in *Lyon* v. *Lyon*, 88 Maine, 395. So in the construction of the statute which provides, after the payment of debts, funeral expenses, etc., that "if there be no kindred to the said intestate, then she (the widow) shall be entitled to the whole of said residue" it was held, in *Hughes* v. *Decker*, 38 Maine, 153, that the term "kindred" meant lawful kindred. In *Blacklaws* v. *Milne*, 82 Ill. 505, (25 Am. Rep. 339) it was held that the word "children," in a statute regulating descent, had reference to lawful children only. In construing the Massachusetts statute which provided that "where any testator shall omit to provide in his will for any of his children, they shall take the same share that they would have been entitled to if he had died intestate," the court held that the word "children" did not include illegitimate children. See also *Cooley* v. *Dewey*, 4 Pick. 93; 2 Jarman on Wills, 217. The rule of interpretation drawn from the foregoing cases of wills and statutes seems to be equally applicable in cases of deeds. We therefore hold that Stephen McIntosh died "without children," so far as the construction of the deed is concerned.

We are now brought to inquire what was the legal character of the estate conveyed to Stephen by the deed in question. Was it an estate tail? The plaintiff says that the word "children" in the clause under consideration is equivalent to "heirs of the body," and that so considered, the clause created an estate tail. In support of this claim, the plaintiff cites the well known definition and examples of an estate tail given by Mr. Washburn in 1 Washburn on Real Property, *72, *73, *74. He also cites our own cases of *Fisk* v. *Keene*, 35 Maine, 349, and *Richardson* v. *Richardson*, 80 Maine, 585. A devise of an estate to a person and his heirs, with a devise of it over, in case he should die without issue, vests in the first devisee an estate in fee tail, with a remainder to the second devisee. *Fisk* v. *Keene*, 35 Maine, 349. The words "dying without issue" are construed to mean an indefinite failure of issue.

*Fisk* v. *Keene,* supra.  The estate goes "to the heirs of the donee's body, which means his lawful issue, his children, and through them to his grandchildren in a direct line, so long as his posterity endures in a regular order and course of descent; and upon the extinction of such issue, the estate determines." Washburn on Real Property, supra.  An estate tail may be created by definite and express words, or it may be by construction or implication. An estate tail created by construction or implication, said Mr. Chief Justice PETERS, in *Richardson* v. *Richardson,* supra, is one "where the testator's meaning is not declared in express terms, but is fairly and clearly enough to be inferred from what he does say." Mr. Washburn by way of illustration says:—"An instance of an estate tail by construction, where there is no direct limitation to the heirs of the donor's body, would be an estate to A, with a proviso that if he shall die without heirs of his body, the property shall revert to the donor, or go over to one in remainder." Wash. on Real Prop., supra. The reason of the rule in cases of constructive estates tail is said to be that the language used implies an intention of the testator that the issue of the first taker should take the estate, after their father, as heirs of his body, and that the devise over should not take effect until the indefinite failure of such issue.

If the clause we are now considering creates an estate tail, it must be so by implication or construction; one certainly is not created by definite and express words.  But this of itself is no objection; for as stated in *Richardson* v. *Richardson,* supra, the former are "much more common."  And it may be conceded that similar language in a devise has been held to create a constructive estate tail. If we should assume that this deed is to be construed by the same rules as are applicable in construing wills, and by which estates tail are held to be created in devises by implication, that would not necessarily decide the question.  The intention of the testator as legally ascertained is to govern.  The implication may be rebutted.  *Whitcomb* v. *Taylor,* 122 Mass. 243; *Schmaunz* v. *Goss,* 132 Mass. 141; *Pratt* v. *Alger,* 136 Mass. 550; *Trumbull* v. *Trumbull,* 149 Mass. 200.  In *Richardson* v. *Noyes,* 2 Mass. 56,

we find the following language: "If, by the devise to the 'survivor or survivors' he [the testator] meant that he or they should take, whenever there should be an indefinite failure of issue, and not till then, however distant that period might be, then he intended a fee tail; and, if by this expression, he contemplated events that were to take place in the lifetime of the devisees, then he did not intend a fee tail." So in *Hooper* v. *Bradbury*, 133 Mass. 303, the language under consideration was the following devise: "The part coming to Eliza, I wish placed in trust, and at her decease, if she leaves no children, paid to her sister Mary Susan." The court said: "It was the definite failure of children, at the decease of Eliza, and not the indefinite failure of issue, that the testator had in mind, and it was at the decease of Eliza that the limitation over to Mary Susan was to take effect, if at all."

It will be observed, however, that the illustrations we have selected are all cases involving the construction of devises. So are the authorities cited by the plaintiff.

Our attention has been called to no case of a deed, and we have been able to find none, in which it has been held that an estate tail was created by implication.

That there is none results in part from the ordinary mode of creation of an entail, and in part from the difference in the rules of construction as applicable to deeds on the one hand, and to devises on the other. The purpose of an entail is to regulate and limit in a particular manner the descent of property from father to son, from generation to generation, to keep property in the same line of descent through successive generations, and this is, and always has been, accomplished usually by means of wills and family settlements.

To be sure, entails can be created by deed, by the use of express and definite terms, but we are speaking here of entails by construction. The distinction between wills and deeds in this particular is noted by Mr. Washburn, in the following language: "In a will, the testator may use the word "children" as meaning heirs of the body; possibly a grantor may do this, but his intention must be clearly shown. 2 Wash. Real Prop. *274.

Blackstone after saying (of grants,) that "as the word heirs is necessary to create a fee, so in further limitation of the strictness of the feodal donation, the word body, or some other words of procreation are necessary to make it a fee tail, and ascertain to what heirs in particular the fee is limited," added, "If, therefore, either the words of inheritance, or words of procreation be omitted, albeit the others are inserted .in the grant, this will not make an estate tail. As, if the grant be to a man and the issue of his body, to a man and his seed, to a man and his children or offspring; all these are only estates for life. . .  . . Indeed, in *last wills and testaments*, wherein greater indulgence is allowed, an estate tail may be created by a devise to a man and his seed, or to a man and his heirs male, or by other irregular modes of expression." 2 Black. Com. 115. So in discussing the difference in the rules of construction between wills and deeds, Blackstone further says in the same volume at page 381, that one rule is "that a devise be most favorably expounded to pursue if possible the will of the devisor, who for want of advice or learning may have omitted the legal or proper phrases. And, therefore, many times the law dispenses with the want of words in devises that are absolutely required in all other instruments. Thus a fee may be conveyed without words of inheritance, and an estate tail without words of procreation. By will, also, an estate may pass by mere implication, without any.express words to direct its course." We hold, therefore, that an estate tail was not created by the deed.

It is our duty to give effect to the intention of the grantor, James McIntosh, if we can do so without violating legal principles. *Lincoln* v. *Wilder*, 29 Maine, 169; *Moore* v. *Griffin*, 22 Maine, 350. We think it can be done. He granted this estate to Stephen his "heirs and assigns forever." The habendum of the deed is to the same effect. As held in *Watson* v. *Cressey*, supra, the grant took effect as a vested remainder in Stephen. But the estate was determinable. We think it was the intention of the grantor, that Stephen's estate should determine if he died without legitimate children; that it should determine upon and at the death of Stephen; that it was the definite failure of issue at that time,

and not an indefinite failure of issue which should determine the estate; and to that intention we give effect.

The result is that the estate in Stephen created by the deed was a vested remainder in fee simple determinable upon a contingency, which contingency happened, and thereupon the title vested in George, and passed from him to the defendant.

*Judgment for defendant.*