479 F.3d 213
 Salvatore J. LaSCALA, Douglas A. Janese and Richard J. Marino, individually and as members of Niagara-Genesee & Vicinity Carpenters Local 280, and as Participants and Trustees or former Trustees of the Local 280 Welfare and Pension Funds, Plaintiffs-Appellants,
Niagara-Genesee & Vicinity Carpenters Local 280, Ronald D. Tower, Russel A. Colosi, Patrick M. Carmody, Tobin J. Gormley, Christopher Shakarjian, individually and as members of Local 280, and as Warden, Conductor, and Trustees of Local 280, respectively, and Trustees of the Niagara-Genesee & Vicinity Carpenters Local 280 Pension Fund, Salvatore J. De Marco, John C. Lunney, individually and as member and Trustee Pro-tem of Local 280, Michael Weber, individually and as members of Local 280, Plaintiffs,
v.
Santo S. SCRUFARI, individually and as Plan Manager of the Niagara-Genesee & Vicinity Carpenters Local 280 Welfare and Pension Funds, Defendant-Appellee,
Gordon J. Knapp, Niagara-Genesee & Vicinity Carpenter Local 280 Pension Fund, David Fay, Richard L. Covatta, individually and as General Agent, Vice-President and Financial Secretary of Local 280, respectively, and as Trustees of the Niagara-Genesee & Vicinity Carpenters Local 280 Welfare Fund, Kenneth E. Baggett, Daniel Fay, John B. Jones, David Knapp, Michael O'Brien, Christopher M. Scrufari, Rocco A. Sidari, Robert Williams, individually, as officers or former officers
of Local 280, and as Trustees or former Trustees of the Niagara-Genesee & Vicinity Carpenters Local 280 Welfare and Pension Funds, John Woodley, Thomas P. Hartz, Angelo Massaro, George R. Weidert, as Trustees of the Niagara-Genesee & Vicinity Carpenters Local 280 Welfare Fund and the Niagara-Genesee & Vicinity Carpenters Local 280 Pension Fund, Dominic P. Massaro, United Brotherhood of Carpenters and Joiners, Sigard Lucassen, individually and as General President of the United Brotherhood, Salvatore A. Pelliccio, William Smith and Kevin A. Thompson, individually and as representatives of the United Brotherhood, Defendants.
Docket No. 06-1146-cv.
 United States Court of Appeals, Second Circuit.
 Argued: November 16, 2006.
 Decided: February 28, 2007.
 
 1
 Timothy A. McCarthy, Burd & McCarthy, Buffalo, New York for Plaintiffs-Appellants.
 
 
 2
 Michael T. Harren, Chamberlain D'Amanda Oppenheimer & Greenfield LLP, Rochester, New York for Defendant-Appellee.
 
 
 3
 Before: CALABRESI and SACK, Circuit Judges, and RAKOFF, District Judge.*
 
 
 4
 RAKOFF, District Judge.
 
 
 5
 Plaintiffs Salvatore J. LaScala, Douglas A. Janese, and Richard J. Marino appeal from so much of a judgment of the United States District Court for the Western District of New York, entered after a bench trial, as found defendant Santo S. Scrufari not liable for certain breaches of fiduciary duties imposed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and as held that damages based on certain other fiduciary breaches that the district court found Scrufari did commit would stop accruing on December 31, 2003, and not be based on the pension benefits Scrufari would receive in the future. For the reasons that follow, we grant the appeal in all essential respects.
 
 
 6
 The underlying action, commenced in 1993, charged several violations of federal labor law and ERISA. By 2004, the primary issue remaining in the case was whether Scrufari, as the Plan Manager of the Niagara-Genesee & Vicinity Carpenters Local 280 Welfare and Pension Funds (the "Funds"), breached his fiduciary duties under ERISA by unilaterally increasing without trustee approval his compensation and benefits and the compensation of his son, who was also employed by the Funds. The pertinent facts, set forth by the district court in its findings of fact and conclusions of law dated January 14, 2004, as modified July 23, 2004, LaScala v. Scrufari, 330 F.Supp.2d 236 (W.D.N.Y. 2004) ("LaScala I"), and in its further decision dated February 27, 2006, LaScala v. Scrufari, No. 93 Civ. 982C(F), 2006 WL 469404 (W.D.N.Y.2006) ("LaScala II"), are as follows.
 
 
 7
 The Funds were established pursuant to trust agreements among the Fund Trustees, Carpenters Local 280, and the Building Industry Employers Association of Niagara County, New York, Inc. LaScala I, 330 F.Supp.2d at 239. These trust agreements provide for five union-designated trustees and five employer-designated trustees, all of whom are fiduciaries of the Funds. Id. The agreements further give the trustees the power to "designate a salaried Fund Manager" and the power to "incur and pay the ordinary and necessary expenses of administration," including the Fund Manager's salary. Id. The trustees may exercise these powers only "by majority vote of the quorum." Id.
 
 
 8
 In the Fall of 1982, Scrufari had been a union-designated trustee of the Funds for some ten years and wanted to be appointed Plan Manager of the Funds. Id. at 240. Scrufari met with his fellow union-designated trustee Sarkee Sanoian, who was the General Business Agent of Local 280, to seek Sanoian's help in obtaining this position. Id. Sanoian apparently agreed to help Scrufari, because at a trustees' meeting in September 1982, Sanoian suggested that the current Plan Manager, Lorelei Collins, be replaced by a union member trained in collection procedures (Scrufari), and asked her when she expected to retire. Id. Although Collins said she planned to stay another seven years, she suddenly (and somewhat mysteriously) resigned on October 10, 1983. Id.
 
 
 9
 Shortly thereafter, at a trustee meeting held on October 21, 1983, a union-designated trustee made a motion to appoint Scrufari as the new Plan Manager. Id. at 240. Two votes were taken and both resulted in a deadlock, with the five union-designated trustees (including Scrufari) voting for Scrufari and the five employer-designated trustees voting against Scrufari. Id.
 
 
 10
 At a subsequent trustees meeting held on December 15, 1983, Sanoian raised again the possibility of appointing Scrufari as the Plan Manager of the Funds and noted that "Scrufari was qualified for the job and should be paid journeyman's wages for it." Id. After a vote to reconsider the motion to appoint Scrufari once more resulted in a deadlock, the trustees agreed to refer the question to an already-scheduled arbitration of an unrelated dispute over a pension benefit increase. Id.
 
 
 11
 At still a further trustees meeting held on March 9, 1984, several union members expressed dissatisfaction with the acting Plan Manager, Kathy Vance. Id. A motion was made to put Scrufari in the Fund office along with Vance and a separate motion was made to fire Vance. Id. The votes on both motions deadlocked. Id. Shortly after the meeting, however, Vance resigned. Id. The trustees held an emergency meeting on March 20, 1984 and a motion was again made to appoint Scrufari as acting Plan Manager. Id. Once again, the vote deadlocked. Id. Instead, the trustees voted to appoint the Funds' actuary, the firm of Maloney & O'Sullivan, as acting Plan Manager. Id. Shortly thereafter, however, without consulting the trustees, Maloney & O'Sullivan hired Scrufari to supervise the Plan office. Id. at 241-42. Scrufari subsequently acknowledged that he was effectively the Plan Manager while he was Maloney & O'Sullivan's employee. Id. Meanwhile, the arbitrator issued a decision favorable to the union-designated trustees on the issue of appointing Scrufari as Plan Manager. Id. at 242. At a meeting on May 2, 1984, the trustees accepted the decision without comment. Id. at 242-43. Nonetheless, Scrufari remained a Maloney & O'Sullivan employee for almost a year without any move by the trustees to make him Plan Manager. Id. at 243.
 
 
 12
 While he was a Maloney & O'Sullivan employee, Scrufari was paid the "General Foreman" rate on the Carpenters Union scale, which the trustees had "generally agreed" would govern the Plan Manager's salary. Id. at 242. On this scale, the lowest rate was the "Journeyman" or "Carpenter" rate; the "Foreman" rate was 10 percent above the Carpenter rate; and the "General Foreman" rate, which was Scrufari's rate, was 10 percent above the Foreman rate. Id. There was an additional "General Agent" rate, which was 10 percent above the "General Foreman" rate, but this rate was not part of the collective bargaining agreement and was paid only to Sanoian, who was the General Agent of the union, pursuant to the by-laws of Local 280. Id.
 
 
 13
 Although Scrufari was being paid the General Foreman rate while he was Maloney & O'Sullivan's employee, rather than Sanoian's higher General Agent rate, Scrufari repeatedly testified that he made an agreement with Sanoian that, upon becoming Plan Manager, Scrufari would be paid the same rate as Sanoian. Id. (citing Tr. at 39, 49, 58, 69, 75, 92). Sanoian denied that he had any such agreement with Scrufari, noting that he was "just one vote on the Board of Trustees," and was therefore not authorized to set Scrufari's compensation by himself. Id. (quoting Tr. at 225).
 
 
 14
 At a meeting on March 7, 1985, the trustees finally made Scrufari the Plan Manager by passing the following resolution: "Motion by Sarkee Sanoian seconded by Merton Marshall to appoint Santo Scrufari as Plan Manager as opposed to the present arrangement with Maloney & O'Sullivan. His present rate of pay as a salaried employee will remain." Id. at 243 (emphasis added by the district court). Scrufari himself was not present at the meeting and only one person at the meeting —O'Sullivan, of Maloney & O'Sullivan —knew what Scrufari's "present rate of pay" was. Id. But nobody asked O'Sullivan what the rate was. Subsequently, at trial, Sanoian, who was present at the March meeting but who was subsequently alienated from Scrufari, testified that his understanding was that the reference to Scrufari's "present rate of pay" referred to a salary based on the "Journeyman" rate, i.e., the very lowest rate of pay on the Carpenters Union scale and well below what Maloney & O'Sullivan was actually paying him. Id. At the other extreme, Thomas Hartz, a union-designated trustee who had remained friendly to Scrufari, testified that his understanding was that Scrufari was being paid at "the same rate that the general business agent [i.e., Sanoian] was making." Id.
 
 
 15
 In any event, Scrufari unilaterally concluded that he was authorized to be paid at the same rate as Sanoian. Id. Further, he concluded that he was authorized to match Sanoian's salary, increase by increase, for the remainder of his tenure as Plan Manager. Id. In accordance with this understanding, on July 1, 1985, just three months after he became Plan Manager, Scrufari gave himself a raise without trustee approval from $18.47 an hour (roughly the General Foreman's rate) to $20.52 an hour (roughly the General Agent's rate, which was also Sanoian's rate). Id. Between 1985 and 1989, Scrufari raised his salary five additional times, each time without trustee approval. Id. at 244.
 
 
 16
 Scrufari also received two other forms of compensation: "weighted fringe" and overtime compensation. The weighted fringes "represented fringe benefits (such as pension and health care contributions) payable to Fund employees on a weighted scale, to be commensurate with fringe benefits paid to Union members covered by the collective bargaining agreement." Id. The trustees approved payment of weighted fringe benefits to employees in the Fund office in 1989, when Scrufari was Plan Manager, and the trustees further approved payment of these benefits retroactive to March 20, 1984, when Scrufari began his employment with Maloney & O'Sullivan. Id. at 244, 261. Scrufari also began paying himself four hours a week in overtime pay (at time and one-half), starting in 1989, without approval of the trustees. Id. at 244.
 
 
 17
 In 1991, plaintiff Douglas Janese became a trustee and began to question the administrative expenses of the Funds. Id. at 244-45. The "office committee" of the Funds sent a letter to Scrufari in August 1992 requesting information about the operation of the Funds office. Id. at 245. Scrufari refused to provide any information. Id. When the office-committee members checked the records themselves, they discovered that Scrufari was paying himself four hours of overtime a week. Id. The committee sent a letter to Scrufari in September 1992 ordering him to stop doing so, and according to payroll records, Scrufari took his last overtime payment in October 1992. Id.
 
 
 18
 In 1992, in a series of meetings, the trustees debated Scrufari's salary. In a meeting on October 16, 1992, the trustees voted to set Scrufari's salary at $59,196.80 per year, with a benefit contribution of $11.25 per hour. Id. The record provides no indication of how the trustees arrived at these figures, but the district court found them equivalent to the General Agent's rate. Id. at 248. In a meeting on November 5, 1992, the trustees debated Scrufari's salary, but decided to leave it at the rate set on October 16. Id. at 245-46. In a meeting on February 11, 1993, Scrufari submitted a letter in which he requested that his salary be adjusted "back to what it was," which he asserted was the "General Agent[']s salary which includes the 40 hrs and 4 hrs at time and one half." Id. at 246 (emphasis in Scrufari's letter). The trustees approved a motion to set Scrufari's salary at $75,088 per year, with wages of $51,688 and fringe benefits at $23,400. Id. Finally, in a meeting on April 17, 1993, the trustees raised Scrufari's compensation to $82,596 in salary and fringe benefits. Id. at 247.
 
 
 19
 During the same period that Scrufari was Plan Manager, Scrufari's son Russell, who had been employed in the Funds office since 1984, asked his father for pay increases, and received same. Id. at 249. Initially, this was done with trustee approval. Thus, in 1989, when Russell asked his father for a salary raise on the ground that the salary he was receiving—$9.95 per hour—was not commensurate with his experience, Scrufari instructed his son to clear it with Sanoian first and then to submit a letter to the trustees. Id. Accordingly, Russell prepared a letter asking for a raise to $11.50 an hour, cleared it with Sanoian, and submitted it to the trustees, who approved Russell's request. Id. In 1990, Russell went through the same process and received a raise to $12.50 an hour. Id. Thereafter, however, between 1990 and 1992, Scrufari gave Russell four additional raises without trustee approval. Id. Scrufari purported to justify these raises on the grounds that he had discretion to set the salaries of Plan-office employees and that the raises were commensurate with Russell's experience. Id. As noted, plaintiffs commenced the present action in 1993 alleging several causes of action against Scrufari and others. In particular, plaintiffs contended that Scrufari breached his fiduciary duties of loyalty and care, in violation of ERISA §§ 404(a)(1), 29 U.S.C. §§ 1104(a)(1), and his fiduciary duty to avoid self dealing, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), by (1) raising his own salary multiple times without trustee approval, (2) paying himself four hours of weekly overtime between 1989 and 1992 without trustee approval, (3) paying himself weighted fringe benefits based on this inflated salary and awarding himself retroactive weighted fringe benefits from 1984 to 1989, without trustee approval, and (4) raising his son Russell's compensation multiple times without trustee approval. Following a bench trial, the district court found that Scrufari had not breached these duties in awarding salary increases to himself and his son, chiefly because the trustees knew or should have known of the increases but did not object, but that Scrufari did breach these duties with respect to the overtime, of which the trustees were ignorant. LaScala I, 330 F.Supp.2d at 251-54. The district court also initially found that Scrufari had breached his fiduciary duties by awarding himself unauthorized retroactive weighted fringe benefits, id. at 253-54, but reconsidered this conclusion in a subsequent opinion and there found that "the weight of the evidence in the record . . . supports the conclusion that the Trustees considered and approved the granting to [Scrufari] of compensation weighted fringe benefits retroactively," id. at 261. After calculating damages for such breaches as it found, the district court entered final judgment on February 28, 2006.
 
 
 20
 On appeal, plaintiffs principally contend that the district court erred in concluding that Scrufari did not breach his fiduciary duties under ERISA when he gave himself and his son salary increases without trustee approval. ERISA § 404(a)(1) states that a fiduciary must discharge his duties "solely in the interest of the [ERISA plan] participants and beneficiaries and"
 
 
 21
 (A) for the exclusive purpose of:
 
 
 22
 (i) providing benefits to participants and their beneficiaries; and
 
 
 23
 (ii) defraying reasonable expenses of administering the plan;
 
 
 24
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
 
 
 25
 . . . and
 
 
 26
 (D) in accordance with the documents and instruments governing the plan
 
 
 27
 . . . .
 
 
 28
 29 U.S.C. § 1104(a)(1). In this context, prudence "is measured according to the objective prudent person standard developed in the common law of trusts." Katsaros v. Cody, 744 F.2d 270, 279 (2d Cir.) (internal quotation marks omitted), cert. denied, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). Thus, "[t]he fiduciary obligations of the trustees to the participants and beneficiaries of [an ERISA] plan are those of trustees of an express trust— the highest known to the law." Donovan v. Bierwirth, 680 F.2d 263, 272 n. 8 (2d Cir.), cert. denied, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). ERISA § 406(b)(1) further provides that "[a] fiduciary with respect to a plan shall not—(1) deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1).
 
 
 29
 In the instant case, as noted, the district court found that Scrufari did not breach his fiduciary duties under ERISA §§ 404(a)(1) or 406(b)(1) by "taking regular salary increases without express Trustee approval" because "the Trustees knew, or in the exercise of their fiduciary duties should have known, that . . . Scrufari was being compensated at the same rate as Sanoian." LaScala I, 330 F.Supp.2d. at 251-52 (finding no breach of ERISA § 404(a)(1)); see also id. at 254 (finding no breach of ERISA § 406(b)(1)). But the fact that the trustees knew, or should have known, that Scrufari was being compensated at the same rate as Sanoian is irrelevant to whether Scrufari breached his fiduciary duties.[1] The trustees, along with Scrufari, were fiduciaries of the Funds, see id. at 239, and one fiduciary's knowledge of another fiduciary's breach does not excuse that breach; to the contrary, pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), one fiduciary's knowledge of another's breach can make the first fiduciary liable for the other's breach.
 
 
 30
 Thus, the question of whether Scrufari breached his fiduciary duties does not turn, as the district court found, on whether the trustees knew or should have known of Scrufari's actions and acquiesced therein, but rather on whether Scrufari himself acted in accordance with the duties imposed by ERISA § 404(a)(1) and ERISA § 406(b)(1). As Plan Manager, Scrufari was a fiduciary bound by "the highest" duty "known to the law," Bierwirth, 680 F.2d at 272 n. 8, to exercise his authority as Plan Manager "in accordance with the documents and instruments governing the plan," ERISA § 404(a)(1)(D). The "documents and instruments governing the plan" here do not give the Plan Manager the power to increase his compensation unilaterally; rather, the trust agreements provide, in effect, that only the trustees may increase the Plan Manager's salary, and then only by a majority vote.[2] LaScala I, 330 F.Supp.2d at 239. A prudent person in Scrufari's position, bound by the highest duty known to the law, would have known that he could not raise his compensation without a majority vote of the trustees and further would have known that no majority vote had taken place. And Scrufari clearly did know this, for when his son Russell initially asked Scrufari for salary increases in 1989 and 1990, Scrufari directed Russell "to submit a letter to the Trustees" for their approval. LaScala I, 330 F.Supp.2d at 249.
 
 
 31
 In these circumstances, when Scrufari unilaterally awarded himself a series of salary raises, Scrufari was not acting "solely in the interest of the [ERISA plan] participants and beneficiaries," as ERISA § 404(a)(1) requires, and was "deal[ing] with the assets of the plan in his own interest," as ERISA § 406(b)(1) prohibits. Accordingly, the district court erred as a matter of law in holding that Scrufari did not breach his fiduciary duties under ERISA § 404(a)(1) and ERISA § 406(b)(1) each time he raised his own salary without trustee approval.[3]
 
 
 32
 Scrufari also violated his fiduciary duties by giving his son Russell raises without trustee approval. The district court concluded that plaintiffs had "failed to establish any breach of the Plan Manager's fiduciary duties under ERISA §§ 404(a) or 406(b) as a result of his authorization of salary increases for his son, Russell," but offered no reason for this conclusion other than that "the preponderance of the evidence shows that the Funds did not suffer any loss as a result of Russell's employment." Id. at 255. The fact that the Funds may not have suffered any loss as a result of Russell's salary increases may bear on the question of damages,[4] but has no bearing on whether Scrufari breached his fiduciary duties in the first place. To the contrary, Scrufari's actions in giving his son raises without trustee approval, where a prudent person in his position would have known that the trust agreements did not authorize this, violated ERISA § 404(a)(1) and ERISA § 406(b)(1). Accordingly, the district court erred as a matter of law in holding that Scrufari did not breach his fiduciary duties each time he increased his son's compensation without trustee approval.
 
 
 33
 Turning to the district court's calculation of damages on the two claims as to which the district court did find liability, i.e., overtime pay and fringe benefits, plaintiffs argue that the district court erred in holding that damages would stop accruing on December 31, 2003 and in holding that damages would not be awarded based on pension benefits yet to be received by Scrufari. Under ERISA § 409,
 
 
 34
 [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . . .
 
 
 35
 29 U.S.C. § 1109. Based on the district court's findings, it is clear that Scrufari received benefits after December 31, 2003, that Scrufari will continue receiving benefits for some period of time into the future, and that some portion of these benefits has been and will be attributable to Scrufari's fiduciary breaches. In these circumstances, under ERISA § 409, those benefits attributable to Scrufari's fiduciary breaches constitute profits that Scrufari must "restore" to the Funds, and that obligation may not be reduced for any of the reasons the district court offered. See LaScala II, 2006 WL 469404, at *4-*5. Accordingly, the district court erred in holding that damages would stop accruing on December 31, 2003 and in holding that damages would not be awarded based on pension benefits yet to be received by Scrufari.
 
 
 36
 We have considered the parties' other arguments and find them to be without merit. We reverse the district court's determination that Scrufari did not breach his fiduciary duties when he gave himself and his son salary raises without trustee approval and conclude that he did so. We also reverse that aspect of the calculation of damages on the overtime pay and fringe benefit claims that stopped accruing damages on December 31, 2003 and that held that damages would not be awarded on pension benefits yet to be received. We remand to the district court to calculate damages on the salary claims and to recalculate damages on the overtime pay and fringe benefit claims.
 
 
 
 Notes:
 
 
 *
 The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Scrufari argues that the district court's finding that the trustees "knew, or . . . should have known" of Scrufari's improper self-awarded salary increases as early as 1989 at least triggers the three-year statute of limitations in ERISA § 413(2), 29 U.S.C. § 1113(2), so that the instant action, which was instituted in 1993, is untimely. But ERISA § 413(2) requires "actual knowledge," and the district court's finding that certain plaintiffs, but not others, had constructive knowledge, even if credited, would not satisfy this provisionSee Caputo v. Pfizer, Inc., 267 F.3d 181, 194 (2d Cir.2001). Further, based on the district court's findings, the trustees did not have "actual knowledge" of all the material facts necessary to bring their claim at least until November 1992, when they learned that O'Sullivan originally paid Scrufari at the General Foreman's rate and that Scrufari's salary at the General Agent's rate was therefore not in compliance with the March 1985 resolution instructing that Scrufari's pay was to remain at the then-"present rate." LaScala I, 330 F.Supp.2d at 245-46. Accordingly, pursuant to ERISA § 413(2), no part of plaintiffs' claim is time-barred. In addition, no part of plaintiffs' claim is time-barred because Scrufari's conduct in breach of his fiduciary duties "was in furtherance of a single scheme," LaScala I, 330 F.Supp.2d at 256, and numerous of Scrufari's breaches occurred within the limitations period, rendering the action timely under ERISA § 413(1)(A). Scrufari further argues that even if the action is timely, his pre-1990 conduct was not alleged in the pleadings and therefore may not be considered. However, even if that is so, Scrufari's pre-1990 misconduct may be treated as if it were alleged in the pleadings under Fed. R.Civ.P. 15(b).
 
 
 [2]
 The trust agreements do not expressly give the trustees authority to set the Plan Manager's salary, but this power may be inferred from the trust agreements' provision granting the trustees the power to "`incur and pay the ordinary [and] necessary expenses of administration.'"LaScala I, 330 F.Supp.2d at 239 (quoting Exhibit 1 at 9). The trust agreements do not under any interpretation provide the Plan Manager with the power to increase his own salary unilaterally in any respect, and our opinion is limited to that circumstance. For example, where a trust agreement permits a Plan Manager to take reasonable cost-of-living increases, we express no opinion on whether a Plan Manager may accordingly be able to grant him or herself these increases without breaching his fiduciary duties. no opinion on whether a Plan Manager may accordingly be able to grant him or herself these increases without breaching his fiduciary duties.
 
 
 [3]
 Plaintiffs also argue that the district court erred in finding that Scrufari did not breach his fiduciary duties when he awarded himself weighted fringe benefits retroactively. On this issue, the district court found that "the Trustees considered and approved the granting to defendant of compensation weighted fringe benefits retroactively to the beginning of his employment with the actuary."LaScala I, 330 F.Supp.2d at 261. This finding is not clearly erroneous. However, even if Scrufari properly received retroactive weighted fringe benefits, the amount of those benefits may have been artificially inflated as a result of the salary raises Scrufari gave himself in breach of his fiduciary duties. Accordingly, to the extent Scrufari received retroactive weighted fringes based on an improperly inflated salary, these amounts will be an element of damages for the district court to consider on remand.
 
 
 [4]
 On remand, Scrufari bears the burden, in the first instance, of demonstrating that "the services rendered by" Russell "were reasonably necessary," and that the value of these "reasonably necessary services at least equaled the sums paid."New York State Teamsters Council Health and Hosp. Fund v. Estate of DePerno, 18 F.3d 179, 183 (2d Cir.1994). The district court's decision in LaScala I, while finding that "plaintiffs presented no evidence in rebuttal challenging the reasonableness of Russell's compensation," 330 F.Supp.2d at 255, did not clearly find that Scrufari had carried his burden of demonstrating the reasonableness of Russell's compensation in the first instance in accordance with DePerno.