HJELM, J.,
with whom JABAB, J., joins, dissenting.
[¶ 28] Today, the Court concludes that a trust beneficiary is not entitled to commence a cause of action arising from allegedly wrongful distributions of trust income made within the limitations period, so long as the trustees’ initial decision to begin those ongoing distributions is made outside the limitations period. Court’s Opinion ¶¶ 22, 27. In my view, this holding is contrary to established' Maine law and the principle that a trustee is bound by the highest ongoing fiduciary duties of good faith and loyalty to trust beneficiaries. I therefore conclude, as a matter of law, that this action is not barred by the statute of limitations. Because I also conclude that the summary judgment record contains genuine issues of material fact on the merits of this action, I would vacate the summary judgment entered by the Cumberland County Probate Court (Mazziotti, J.) and remand for further proceedings. For these reasons, I respectfully dissent.
[¶ 29] I will first address the reasons why the statute of limitations does not bar David Gourevitch’s claim for a declaratory judgment. I will then discuss the factual issues revealed in the record that preclude a determination, as a matter of law, that Thomas Maxwell, a nonmarital child, is a beneficiary of the' George Parsons Trust— factual disputes that require this case to be remanded for further proceedings in the Probate Court.
*222 A. Statute of Limitations
[¶ 30] Title 14 M.R.S. § 752 (2016) provides that “civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards.” As the Court states, a cause of action based on a breach of a trust accrues at the time of the breach, Court’s Opinion ¶ 16, because that is when the claimant sustains a “judicially cognizable injury,” Estate of Miller, 2008 ME 176, ¶ 25, 960 A.2d 1140 (quotation marks omitted).
[¶ 31] The Probate Court concluded, as a matter of law, that Gourevitch’s 2014 complaint was timely because a new breach occurred each time the Trustees made a monthly distribution of income-r-allegedjy wrongfully — to Maxwell. The court’s conclusion was predicated on its determination that trustees in Maine have a continuing duty, accompanying each distribution to a beneficiary, to ensure that the recipient is entitled to that distribution. In my opinion, thaf legal assessment of the continuing , nature of the Trustees’ duties is correct because it is supported by Maine law and is consistent with the essential nature of a trust and a trustee’s fiduciary duties.
[¶ 32]' “A trust ,,, is a fiduciary relationship with respect to property ... subjecting the person who holds title to the property to duties to deal with it for the benefit of’ another. Restatement (Third) of Trusts § 2 (Am. Law Inst. 2003). Because of “the intimate nature of the [trustee] relationship,” and “the great control of a trustee over the property of the beneficiary,” the' law demands ‘of a trustee “an unusually high standard of ethical or moral conduct.” Amy Morris Hess et al., The Law of Trusts and Trustees § 1 at 5 (3d ed. 2007). Indeed, the fiduciary duties of a trustee are “the highest known to .the law.” LaScala v. Scrufari, 479 F.3d 213, 219 (2d Cir. 2007) (quotation marks omitted); see also Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 546 (1928) (“Not honesty alone, but the punctilio of an honor the most, sensitive, is .., the standard of [trustee] behavior.”).
[IT 33] Within that “unusually high standard” of conduct and fidelity, Hess et al., The Law of Trusts and Trustees § 1 at 5, “the extent and limits of [a trustee’s] authority” are defined by the trust itself, In re Marble, 136 Me. 52, 56, 1 A.2d 355 (1938) (quotation marks omitted). Accordingly, with respect to a trustee’s specific responsibilities, the trustee is “bound, in the first place, to conform strictly to the directions of the trust. This is in fact the cornerstone upon which all other duties rest, the source from which all other duties take their origin. ... If the trust is express, created by deed or will, then the provisions of the instrument must be followed and obeyed.” Id. (emphases added) (quotation marks omitted). Additionally, in fulfilling the primary obligation to execute the trust’s directions, a trustee is ..bound to act consistently with duties defined by statute. Specifically, trustees have a duty to “administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries and in accordance with [the Maine Uniform Trust Code].” 18-B M.R.S. § 801 (2016) (emphasis added), In addition, trustees have a duty to “administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements and other circumstances of the trust.” 18-B M.R.S. § 804 (2016) (emphasis added).
[¶ 34] A. trustee’s statutory duty to administer a trust- “in good faith,” “as a prudent person would,” necessarily encompasses the duty to ascertain that each individual whom the trustees designate to receive trust income is actually entitled to those payments pursuant to the terms of *223 the trust — in other words, that the settlor intended to include that person as a beneficiary. See Restatement (Third) of Trusts § 76 (Am. Law Inst. 2007) (stating that a trustee’s duty to administer a trust “in good faith, in accordance with the terms of the trust” includes the responsibility to “ascertain[ ] :.. the beneficiaries and purposes of the trust”); Id: § 77 cmt. c (stating that to fulfill the duty of prudence, a trustee must “acquire a reasonable understanding of the terms of the trust” and “the rights and interests of the beneficiaries”); George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees §' 583 át 348-49 (rev. 2d ed. 1980) (“After a trustee has accepted the trust ... it becomes his duty to carefully examine the terms of the trust and. the trust assets in order to determine exactly what property forms the subject-matter of the trust, who are the beneficiaries, and what are the trustee’s duties with respect to the trust property and the beneficiaries.” (emphasis added) (footnotes omitted)).
[¶ 35] Contrary to the Court’s analysis, however, a trustee’s initial determination of who is a “beneficiary” is not the end of the matter. We have explained that a trustee’s duty of prudence in Maine is “ongoing.” Nevin v. Union Tr. Co., 1999 ME 47, ¶¶ 26-28, 726 A.2d 694. A trustee is therefore not discharged from her fiduciary duties when that trustee simply makes an initial or interim discrete decision. See George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 541 at 160 (rev. 2d ed. 1978, replacement vol. 1993) (“The trustee must continually demonstrate good faith in administering the trust and in dealing with beneficiaries.” (emphasis added)). Rather, the fiduciary duties defined by statute attach to each action a trustee takes in executing the terms of the trust, including each decision — whether ministerial or otherwise — to distribute trust income to a particular person.
[¶ 36] In addition to being a violation of a trustee’s statutory duties, a trustee’s distribution of trust income to an individual who is not entitled to receive the payments is a violation of that trustee’s- primary obligation “to conform strictly to the directions of the trust.” In re Marble, 136 Me. at 56, 1 A.2d 355 (quotation marks omitted); see also George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 814 at 315 (rev. 2d ed. 1981) (stating that a trustee has “an unconditional obligation to follow the applicable provisions regarding payments and distributions” (emphasis added)). If a trustee repeatedly makes distributions to an improper recipient, then with each subsequent payment the trustee acts in derogation of the terms of the trust not only by allowing an ineligible person to participate, but also by diminishing the amount of the payments that the true beneficiaries are entitled to receive because of the expanded pool of recipient's. In other words, each time a trustee makes an improper payment, the trustee breaches his or her fiduciary duty Owed to the true beneficiaries, causing a new injury to them, because the amount of the distribution they receive is less than it should be. The injury does not end when the trustees first'decide to make those ongoing payments.
[¶ 37] Accordingly, based on fundamental principles of trust lav?, I conclude that even after a trustee makes an initial distributional decision, that trustee has a fiduciary duty to ensure, on an ongoing basis, that income is being distributed only to proper beneficiaries consistent with the terms of the trust. Consequently, the accountability of trustees to the beneficiaries does not end when they make that initial *224 distributional decision.[9] Rather, they remain liable for the ongoing actions placed in motion by their initial decision.
[¶ 38] In their discussion of the statute of limitations and their analysis of when Gourevitch’s cause of action accrued, the parties have focused on Tibble v. Edison International, 575 U.S. -, 135 S.Ct. 1823, 191 L.Ed.2d 795 (2015). Tibbie itself does not bear directly on this issue but, to the extent that it does provide guidance here, it supports' the conclusion that the Trustees have an ongoing duty to ensure that the interests of the beneficiaries are protected.
[¶ 39] The Tibbie Court considered “whether a fiduciary’s allegedly imprudent retention of an investment is an ‘action’ or ‘omission’ that triggers the running of the 6-year limitations period” applicable to claims brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. §§ 1001-1461 (LEXIS through Pub. L. No. 115-45).[10] Tibble, 575 U.S. -, 135 S.Ct. at 1826. The Court stated “that an ERISA fiduciary’s duty is derived from the common law of trusts,” id. at 1828 (quotation marks omitted), and explained that
under trust law, a fiduciary normally has a continuing duty of some kind to moro- *225 itor investments and remove imprudent ones. A plaintiff may allege that a fiduciary breached, the duty of prudence by failing to properly monitor investments and remove imprudent ones. In such a case, so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely.
Id. at 1828-29 (emphasis added). Therefore, although Tibbie involved the fiduciary duty to prudently oversee trust investments rather than the duty to distribute trust income only to proper beneficiaries, thé opinion confirms the ongoing nature of the fiduciary duties that trustees are bound to discharge.
[¶ 40] Further, despite the Court’s analytical reliance on Maine Municipal Employees Health Trust v. Maloney, 2004 ME 51, 846 A.2d 336, Court’s Opinion ¶ 19, that case does not support the Court’s view that the legal responsibility of a trustee is limited to the trustee’s initial distributional decision — in fact, it does not involve fiduciary responsibilities at all. Rather, in Maloney, a health care plan paid medical expenses incurred by a covered person who had sustained injuries arising from another person’s tortious conduct and who later settled the resulting tort claim. Maloney, 2004 ME 51, ¶ 2, 846 A.2d 336. Seven years after the settlement, the plan brought a claim against the covered individual alleging unjust enrichment — not breach of fiduciary duty — and seeking reimbursement of the medical expenses it had paid. Id. ¶¶ 3-4. We rejected the plan’s argument that its claim was not time-barred because it “accrue[d] anew with each monthly annuity payment,” concluding that the injury had in fact occurred when the participant first settled his,claim against the tortfeasor. Id. ¶¶9-10. The litigants in Maloney, however, were merely parties to a health insurance contract, see id. ¶ 6, and there is no suggestion, that the-covered individual owed any fiduciary duty to the plan, let alone- a continuing duty. Rather, the alleged wrongdoer, namely, the insured, was a health care plan participant — not a trustee — who merely received periodic payments from, a third party. See id. ¶2.
[¶ 41] Conversely, here, the Trustees are fiduciaries and are bound by continuing obligations that ran to Gourevitch as a beneficiary of the Trust. Accordingly, the Trustees’ repeated decisions to pay Trust income to Maxwell, allegedly in violation of their continuing fiduciary obligations in the administration of the Trust, represent discrete “judicially cognizable injur[ies],” Estate of Miller, 2008 ME 176, ¶ 25, 960 A.2d 1140 (quotation marks omitted), each giving rise to a new cause of action. Maloney is therefore inapplicable.
[¶ 42] For these reasons, I conclude that a new cause of action accrued each time the Trustees made k distribution of Trust income to Maxwell, because he allegedly was not entitled to those payments pursuant to the terms of the Trust. With each such payment, the true beneficiaries allegedly sustained: a new injury, resetting the clock for purposes of the statute of limitations. This conclusion is the product of Maine law and the law of trusts that establish the continuing nature of a trustee’s duty to comply with the-provisions of a trust, including its distributional requirements.[11] Accordingly, because the undisputed facts establish that *226 Goureviteh commenced this action for a declaratory judgment challenging Maxwell’s beneficiary status within six years of at least one of the Trustees’ monthly payments to Maxwell,' the claim is timely.[12] See McLaughlin v. Superintending Sch. Comm. of Lincolnville, 2003 ME 114, ¶¶ 11-12, 19, 832 A.2d 782 (explaining that summary judgment on a statute of limitations defense is proper when there is no genuine issue of material fact as to whether the cause of' action accrued within the limitations period). '
B. Status of Nonmarital Children
[IT 43] I next address the merits of the parties’ arguments because if — as I conclude — Gourevitch’s claim is not time-barred but the undisputed facts nevertheless were to establish that Maxwell is a proper beneficiary of the Trust, then this matter would have to be remanded for entry of a summary judgment for Maxwell in any event. For the following reasons, I disagree with that result. Rather, ,1 conclude that neither party is entitled to a judgment as a matter of law on the issue of whether Maxwell is a proper beneficiary, and I would therefore ’ remand this matter to the Probate Court for further proceedings.
[¶ 44] The specific issue is whether the court erred by concluding, as a matter of law, that the terms used to identify Trust beneficiaries — “issue” and “descendants”— must be construed to omit nonmarital children. •'
[¶ 45]' “The cardinal rule is to, give effect to the intention of the testator gathered from the language of the will [creating the trust] ....” Me. Nat'l Bank v. Petrlik, 283 A.2d 660, 664 (1971). The court must determine a settlor’s intent at the time the trust was created, without regard to sensibilities that may have evolved later.[13] See id.; New England Tr. Co. v. Sanger, 151 Me. 295, 301, 118 A.2d 760 (1955). “The intent of the settlor, as determined by unambiguous language in the [trust], is a question of law that we review de novo.” Fiduciary Tr. Co. v. Wheeler, 2016 ME 26, ¶ 9, 132 A.3d 1178 (quotation marks omitted). Conversely, if the trust contains an ambiguity, a court’s determination of the settlor’s intent is a question of fact to be adjudicated in the trial court. See Newick v. Mason, 581 A.2d 1269, 1273-74 (Me. 1990). If “a showing of all the relevant extraneous circumstances provides no basis for a fair conclusion as to the meaning” of a particular term, a court may apply the “presumptive” meaning — namely, a meaning based on common law principles, Ziehl v. Me. Nat’l Bank, 383 A.2d 1364, 1372 (Me. 1978), superseded by statute on other grounds, P.L. 1979, ch. 540, § 1 (effective *227 Jan. 1,1981) (codified as amended at 18-A M.R.S. § 2-611 (2016)), so long as the presumption was applied during the set-tlor’s lifetime and “may be supposed to have been in the mind of the testator at the time” the will creating the trust was made. Petrlik, 283 A.2d at 664.
[¶ 46] Paragraph 5 of the Trust — which is the source of Maxwell’s claimed interest — provides that a deceased descendant’s share of Trust income is payable to his or her “issue.” In the context of a summary judgment analysis, the question therefore is whether a nonmarital child such as Maxwell indisputably must be considered “issue” of his biological mother within the meaning of the Trust.
[¶ 47] We have previously stated that the term “issue” is ambiguous and that its meaning varies according to the intention of the settlor who uses it. Gannett v. Old Colony Tr. Co., 165 Me. 248, 249, 153 A.2d 122 (1959); Fiduciary Tr. Co. v. Brown, 152 Me. 360, 371-72, 131 A.2d 191 (1957); Union Safe Deposit & Tr. Co. v. Dudley, 104 Me. 297, 306, 72 A. 166 (1908). Although, here, Parsons expressly defined “issue” in Paragraph 8 of the Trust to mean “all descendants,” that provision fails to provide any additional definitional meaning because, as we have noted in the past, the term “issue” is synonymous with the term “descendants.” Fiduciary Tr. Co., 152 Me. at 371-72, 131 A.2d 191; see also Morse v. Hayden, 82 Me. 227, 230, 19 A. 443 (1889) (stating that “issue . is synonymous with lineal descendant”) (quotation marks omitted); Union Safe Deposit & Tr. Co., 104 Me. at 307, 72 A. 166 (stating that “the word ‘issue’ is to be interpreted according to, its primary signification as importing descendants”); Newick, 581 A.2d at 1273 (“ ‘Issue’ is commonly interpreted as meaning ‘[a]ll persons who have descended from a common ancestor.’ ” (quoting Black’s Law Dictionary 746 (5th ed. 1979)). As the Probate Court noted, the definition of “issue” included in the Trust merely indicates that the terms “issue” and “descendants” had “like meanings for the purposes of defining the beneficiaries.” Because the term “issue” is ambiguous, and because the term “descendants” — which Parsons used to define “issue” — is merely a synonym that does not provide additional definitional content, neither term has a fixed meaning that can be. discerned as a matter of law.
' [¶ 48] The Trust further states in Paragraph 8 that “[distribution of income among the issue of a ... descendant '... shall mean that such income shall be paid in equal shares to his or her children.” (Emphases added.) For reasons similar to those stated above, this provision does not allow any determination of the meaning of the term “issue” as a matter of law because the term “children,” like the term “issue,” is ambiguous and must be construed based on Parsons’s intent when the Trust was created. See Ziehl, 383 A.2d at 1369-70 (stating that the word “children” is ambiguous because in general usage it is “associated with more than one category of external objects”); In re Woodcock, 103 Me. 214, 216-17, 68 A. 821 (1907) (stating that the meaning of “children” depends on the language of the testamentary instrument and the circumstances existing when it was executed); Bolton v. Bolton, 73 Me. 299, 309-10 (1882) (same). Accordingly, regardless of what meaning may be ascribed to the term “children” today, the plain language of the Trust does not indisputably establish whether, in 1907, Parsons intended to include nonmarital children as beneficiaries. .
[¶ 49] The express rule of construction that appears in Paragraph 28 of the Trust also does-not unambiguously resolve the question at issue here. Paragraph 28 states:
*228 The laws of the State of Maine shall apply to and govern the validity, construction and operation of this agreement, except as the construction or legal effect of this instrument is expressly stated in the provisions of the deed itself, and all matters, things and proceedings now or hereafter arising or had hereunder.
By using the phrase “laws of the State of Maine,” Parsons did not distinguish between statutes and common law, and he could reasonably have been referring to either.[14] Applying the statutes and common law in effect during Parsons’s lifetime, however, leads to competing conclusions as to whether he intended to include nonmarital children in the gift to the “issue” of his deceased descendants.
[¶ 50] The statutes in effect in 1907 included a provision that allowed an “illegitimate child” to inherit property from his or her biological mother who died intestate. R.S. ch. 77, § 3 (1903).[15] Accordingly, if the phrase “laws. of the State of Maine”, is construed to mean statutory law, and if the 1907 statutes of descent can reasonably be analogized to trusts, then the language of the Trust reasonably allows the conclusion that Parsons intended to include nonmari-tal children within the meaning of the terms “issue” and “descendants.”
[¶ 51] Cases decided during Parsons’s lifetime, however, reveal a general com-mdn law principle that although nonmari-tal children were entitled to “take under any disposition by deed or will adequately describing them,” they were not entitled to participate in gifts to “issue” or “children.” 2 Thomas Jarman, A Treatise on Wills 205 (5th ed. 1881); see also Bolton, 73 Me. at 311 (explaining that nonmarital children “are not objects of a gift to children or issue of any other degree, unless a distinct intention to that effect be manifest upon the face of the will; and if by possibility, legitimate children alone would have satisfied the terms of such gift, illegitimate children cannot take” (quotation marks omitted)); Lyon v. Lyon, 88 Me. 395, 406, 34 A. 180 (1896) (“[W]here legacies or devises are given to a ‘child,’ or ‘children’ of some person named ... these words mean, prima facie, legitimate children ....”); Hall v. Cressey, 92 Me. 514, 516, 43 A. 118 (1899) (“The authorities are to the effect that the word ‘child’ in a will or deed means a legitimate child.”) The presumptive, common law meaning 'of “issue” therefore did not comport with 1907 statutory law, and leads to a different conclusion as to Parsons’s intent.
[¶ 52] Because the rule of construction prescribed in Paragraph 28 of the Trust can lead to opposite results depending on whether it is read to invoke statutes or common law presumptions, I conclude that the record supports competing inferences *229 as to whether Parsons intended to include nonmarital children as beneficiaries of the Trust. The summary judgment process therefore is not the appropriate means to resolve this dispute. This is true even if there is no additional evidence beyond what is contained in the summary judgment record that could be presented at a trial on remand. See Rose v. Parsons, 2015 ME 73, ¶ 4, 118 A.3d 220 (“Summary judgment process is not a substitute for trial .... When facts or reasonable inferences to be drawn from, the facts are in dispute, the court must engage in fact-finding, and summary judgment is not available.”) (emphasis added). Accordingly, I would vacate the summary judgment entered in favor of Gourevitch and remand for a trial so that the court can determine the most persuasive among the parties’ competing views of historical facts and conclusions to be drawn from those factual disputes.

. Renz v. Beeman, which the Court cites as support for the proposition that the statute of limitations begins to run at the time of the initial breach, Court’s Opinion ¶ 16, is inap-posite because that case involves a claim based on a one-time event, rather than ongoing or repeated actions in derogation of a trust, as is the case here. 589 F.2d 735, 743, 748-49 (2d Cir. 1978) (concluding that a onetime breach of trust occurred, and the statute of limitations began to run, on the date when a trustee purchased certain shares of stock). The cases cited by the Court as further support for this point are not helpful to an analysis of the case at bar. See Harris Tr. Bank of Ariz. v. Superior Court, 188 Ariz. 159, 933 P.2d 1227, 1231-32 (Ct. App. 1996) (addressing the question of whether a particular statute of limitations applied at all, not when it began to run); Cecil v. Cecil, 712 S.W.2d 353, 355 (Ky. Ct. App. 1986) (applying a unique statute of limitations where the triggering event was not an alleged breach of trust, but rather the beneficiaiy’s "receipt of [a] final account or statement”).
Getty v. Getty, 187 Cal.App.3d 1159, 232 Cal.Rptr. 603 (Cal. Ct. App. 1986); on which the Court also relies, Court’s Opinion ¶ 18, similarly is inapposite. That case involved a beneficiary’s claim to reform a trust to increase his share of trust income and principal so that it would be equal to that of his brothers, Getty, 187 Cal.App.3d at 1167-68, 232 Cal.Rptr. 603—it was not a case based on an alleged breach of trust. An intermediate-level court held that the beneficiary’s action for reformation was time-barred because the trustees had "distributed income to the beneficiaries in exactly the amounts required under the declaration of trust" for over foriy-two years, and the beneficiary had actual or constructive knowledge of the settlors’ alleged mistake for thirty-nine years before filing suit. Id. at 1169, 232 Cal.Rptr. 603 (emphasis added). By seeking reformation of the trust, the beneficiary in Getty expressly acknowledged that there was no continuing violation because, as the court found, the trustees were distributing income in the amounts required by the trust. See id. Rather, the question was whether the terms of the trust that mandated those distributions should■ be altered. See id.
Conversely, here, Gourevitch sued for a declaratory judgment to determine whether the Trustees’ repeated and ongoing distributions of trust income to Maxwell violate the actual terms of the Trust. Because Getty did not involve ongoing conduct by the trustees that was in violation of the trust, it has no bearing on whether Gourevitch’s cause of action accrues anew with each income distribution.

. The statute of limitations on ERISA claims provides, in pertinent part, that "[n]o action may be commenced under this title with respect to a fiduciary’s breach of any responsibility, duty, or obligátion ... after the earlier of '... six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation.” 29 U.S.C.S. § 1113 (LEXIS through Pub. L. No. 115-45).

. I agree with the Court that, as the Probate Court concluded, Gourevitch is not entitled to the benefit of the common law discovery rule, which tolls the statute of limitations "until the plaintiff discovers or reasonably should have discovered the cause of action." Nevin v. Union Tr. Co., 1999 ME 47, ¶ 25, 726 A.2d 694; Court’s Opinion ¶¶ 23-26. My conclusion that Gourevitch’s' claim is timely does not rely on the application of the common law tolling rule.

. Contraiy to the Court’s statement, Court’s Opinion ¶21, a holding that Gourevitch’s claim is timely' would not detract from the essential purpose of statutes of limitations "to provide eventual repose for potential defendants and to avoid the necessity of defending stale claims," Angell v. Hallee, 2012 ME 10, ¶ 8, 36 A.3d 922 (quotation marks omitted). Rather, a trustee would enjoy that repose when any other alleged wrongdoer would, namely, six years after the last injury she participated in creating, which here consisted of allegedly making a wrongful payment of trust assets.

. For this reason, the rule of construction in the Maine Probate Code, which states that “persons born out of wedlock are included in class gift terminology and terms of relationship in. wills and in trust instruments,” does not apply to these proceedings because that statute became effective in 1981, long after the Trust was created. P.L. 1979, ch. 540, § 1 (effective Jan. 1, 1981) (codified as amended at 18-A M.R.S. § 2-611 (2016)); see also Hall v. Cressey, 92 Me. 514, 516, 43 A. 118 (1899) (stating. that “[m]odern sentiment[s] as expressed in modern statutes” have no bearing on the interpretation of an instrument executed before the statutes were adopted).

. In other places in the Trust, Parsons referred to statutory law specifically. For example, in Paragraph 8, Parsons expressly rejected the definition of "per stirpes" provided "under the statutes of distribution in the State of Maine.” The phrase "laws of the State of Maine” could therefore reasonably be construed to be broader than the reference to the "statutes of distribution” in Paragraph 8 of the Trust and include the common law,

. R.S. ch. 77, § 3 (1903) provided in full,
An illegitimate child born after March twenty-four, in the year of our Lord one thousand eight hundred and sixty-four, is the heir of his parents who intermarry. And ■ any such child, born at any time, is the heir of his mother. And if the father .of an illegitimate child adopts him or her into his family, or in writing acknowledges before some justice of the peace or notary public, that he is the father, such child is also the heir of his or her father. And in each case such child and its issue shall inherit from its parents respectively, and from their lineal and collateral kindred, and these from such child and its issue the same as if legitimate.