DWIGHT MARBLE AND HARRY SEAMON, TRUSTEES

AND JOHN V. O'CONNELL, BENEFICIARY

APPELLANTS FROM DECREE OF JUDGE OF PROBATE.

Androscoggin.    Opinion, September 13, 1938.

*Berman & Berman* (Lewiston, Maine), for appellants.
*Clifford & Clifford*, for appellee.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J.   This case come up on exceptions to the decree of a Justice of the Superior Court, sitting as the Supreme Court of Pro-

bate. It concerns the allowance of two items in the probate account of Mary McLane Reardon, Trustee under the will of Susan O'Connell, for the benefit of John V. O'Connell. These items constitute charges for the board and expenses of Helen O'Connell, minor daughter of the beneficiary for the period of six years, and aggregate $1934.69.

By the will of Susan O'Connell, one-half of her estate, real and personal, was given to her daughter, Mary McLane Reardon. The remaining one-half was devised and bequeathed to this daughter as trustee in the following terms:

"To properly care for and manage the same, collecting the rents, income and dividends therefrom, and paying all taxes, insurance premiums, repairs and other necessary expenses connected therewith and from the net income thereof pay monthly to my son, John V. O'Connell of said Lewiston, a sufficient amount to suitably and reasonably support and maintain, in health and sickness, said John V. O'Connell, individually, according to his degree and station in life, for and during the term of his natural life."

By the further provisions of the will, the daughter became entitled to the corpus of the trust estate upon the death of her brother, John V. O'Connell, if she survived him, and if not, it was willed to her legal heirs.

While there were no findings of fact in the decision of the court below, inspection of the record warrants the following statement of the situation as a basis for the decree.

Susan O'Connell died in 1925 and on August 25th of that year Mrs. Reardon (then McLane) was confirmed by the Probate Court as trustee under her will. The trust estate consisted of a one-half interest in real estate valued at $4000.00 and personal estate amounting to $2682.21. First account of the trustee was allowed October 12, 1926 showing payments to John V. O'Connell as beneficiary of $745.17.

On June 2, 1928 the wife of John V. O'Connell died, leaving him with a child, Helen, then eight years of age. O'Connell was at the time serving a sentence in the county jail. The trustee, who was his sister and the aunt of the minor child, attended the funeral of her

sister-in-law and it was arranged that the child should return with her to her home in Massachusetts. Some weeks later, after O'Connell was released from jail, he went to Massachusetts to visit his sister and daughter, remaining about a week. The trustee asserts that during this period an arrangment was entered into by which she should care for, educate and support the child, Helen, and be reimbursed from the income of the trust fund otherwise payable to O'Connell. The exceptants contend that there was no agreement for reimbursement and that the services and expenditures of the trustee on account of the child were gratuitous.

Albeit, the child stayed with her aunt for over six years. Aside from $15.00 which O'Connell collected on March 13, 1929 from a tenant of the real estate in which both were interested, there is no evidence that he ever thereafter asked for or received any net income from the trust fund, such income approximating $400.00 a year. The only exception is a debit to him of life insurance premiums paid of about $22.00 a year. He makes no claim that he paid his child's expenses, and admits that his only contributions to her welfare were small sums, chiefly spending money.

The child was returned to her father in August, 1934. A year later O'Connell made demand for the first time for an accounting by the trustee.

The exceptants, recognizing the rule that "findings of fact by a Justice presiding in the Supreme Court of Probate are conclusive and not to be reviewed by the Law Court if the record shows any evidence to support them." *First Auburn Trust Co. v. Baker,* 134 Me., 231, 184 A., 767; *Chaplin, Appellant,* 133 Me., 287, 177 A., 191 and cases cited, assert that there was no evidence of an agreement between the beneficiary and the trustee, of any acquiescence in or ratification of such arrangement by the beneficiary, cite alleged inconsistencies in the conduct of the trustee, and claim maladministration of the trust. These were controverted questions of fact and the court below made its finding which appears to be fully warranted by the record.

But the exceptants go further and say that it is the duty of the trustee to follow the directions in the will and there has been a failure to comply with its specific provisions.

The duty of a trustee is clearly set forth in 3 Pomeroy Eq. Jur., 4th Ed., Sec. 1062, as follows:

"Under the general obligation of carrying the trust into execution, trustees and all fiduciary persons are bound, in the first place, to conform strictly to the directions of the trust. This is in fact the corner-stone upon which all other duties rest, the source from which all other duties take their origin. The trust itself, whatever it be, constitutes the charter of the trustee's powers and duties; from it he derives the rule of his conduct; it prescribes the extent and limits of his authority; it furnishes the measure of his obligations. If the trust is express, created by deed or will, then the provisions of the instrument must be followed and obeyed. If the fiduciary relation is established by law and regulated by settled legal rules, then these legal rules must constantly guide and restrain the conduct of the one who occupies the relation. In this manner the acts, powers, duties, and liabilities of executors, administrators, guardians, and corporation directors are governed by a fixed system of legal rules which constitute their instrument or declaration of trust. A trustee can use the property only for the purposes contemplated in the trust, and must conform to the provisions of the trust in their true spirit, intent, and meaning, and not merely in their letter. If, therefore, through non-feasance, he omits to carry the trust into execution, or through mis-feasance he disobeys the directions of the trust, he renders himself in some manner liable to the beneficiary whose rights have been thus violated."

In behalf of the trustee, it is contended that, in the present case, if the trustee has disobeyed the explicit and literal directions of the will, it has been at the instance, by the arrangement and agreement, and with the acquiescence and ratification of the beneficiary himself and in recognition of the legal obligation resting upon him to support his own minor child.

Under such circumstances, the trustee invokes the rule stated in 4 Bogert on Trusts, Sec. 941, pp. 2708–2709:

"If a beneficiary, of full age and sound mind, acting with full knowledge of the facts of the case and of his rights, and

not under the influence of misrepresentation, concealment, or other wrongful conduct on the part of the trustee or another, consents that the trustee or a third person may perform an act or refrain from performing an act, equity will not permit the beneficiary to allege thereafter that the conduct of the trustee or third person to which consent was given was a breach of trust, or amounted to participation in a breach."

"The rules for the administration of trusts, established by the trust instrument, statute, and court rules, are solely for the benefit of the cestui. If he voluntarily withdraws from their protection, when fully competent, he ought to be permitted to do so. There is nothing against public policy in giving validation to his consent. He cannot come into equity and complain of an act which he has expressly sanctioned without violating the 'clean hands' doctrine of chancery. The trustee or the third person, or both, have by hypothesis acted on the consent of the cestui. It would be extremely unfair to allow him thereafter to contend that the act which he impliedly said would be rightful was in fact wrongful. He would be entrapping the opposing party."

And of similar import in Sec. 971, p. 2831:

"Payments made by a trustee will also be credited to him on his accounting, if, while not made in the execution of powers given him by the settlor, a statute, or the court, they are payments which were approved by the cestuis in advance, or ratified by the cestuis, or the court after their making."

With close relation to the instant case, we find the following by the author first quoted, Pomeroy Eq. Jur., 4th Ed., Vol. 3, Sec. 1083:

"A beneficiary who, subsequently to a breach of trust, acquiesces in it, cannot maintain a suit for relief against those who would otherwise have been liable. The acquiescence, in order to produce this effect, must take place with full information by the beneficiary of all the facts, and with full knowledge of his legal rights arising from these facts; in short, it must have all the requisites of an acquiescence heretofore described,

to defeat the liability of a defaulting fiduciary. Although in general, lapse of time is not a defense to the beneficiary's right of action, yet a great delay after knowledge of the breach of trust may be a bar. If a cestui que trust is a party to, or concurs in, or even assents to, a breach of trust by the trustee, he debars himself thereby of all claim for relief."

To the same effect, see Restatement, Trusts, Sec. 216.

The fundamental rules as to the duties and obligations of trustees, as hereinbefore cited, have been adopted and approved by our own Court.

In *Murphy* v. *Delano*, 95 Me., 229, 49 A., 1053, the court quoted in substance the rule as given in Pomeroy, Sec. 1062. In that case a creditor undertook to reach and apply to his debt the income of a trust fund which was in the nature of a spendthrift trust, and it was noted by the court that in the will there under consideration, nothing was secured to the beneficiary as a matter of right which could be reached by a creditor's bill.

In the present case the beneficiary was entitled of right to a sum (limited by the amount of the net income) sufficient to suitably and reasonably support and maintain him, in health and sickness, according to his degree and station in life. The sum of all the charges allowed in the trustee's probate account, does not exceed the net income.

In *Jordan* v. *Trust Estate*, 111 Me., 124, 88 A., 390, the trustee invested funds in an unproductive farm and depended upon an agreement or request of the beneficiary and his wife that the investment should be continued. To this the Court replied:

"Harry E. Jordan was under guardianship, and in law incompetent to manage his own estate, and testimony of how he desired the trust estate managed was inadmissible to excuse the trustee for the non-performance of the clear and unmistakable intent of the testator, as expressed in the clause of the will creating the trust."

In this case O'Connell was *sui juris*, competent to contract, and ostensibly at least, actuated by the worthy motive of providing a good home for his motherless child.

The Court in *Roberts* v. *Stevens*, 84 Me., 325, 24 A., 873, con-

struing the particular will under consideration found an expressed intention to protect the cestui from his creditors, and to prohibit him from transfer or assignment by anticipation. Even under such circumstances, the Court pointed out that after payment to the beneficiary:

"It was no longer a legacy or an annuity or any part thereof. Its identity was gone. For whatever purpose, or to whomsoever the beneficiary might upon receiving it thereafter dispose of it, his act could in no wise be deemed in contravention or an evasion of the injunction."

Here the corpus of the trust estate amounted to approximately $6800.00. It can not be reasonably argued that the income on such sum would be more than sufficient for the designated purpose. The trustee had no discretion. She must account to the beneficiary for it. Upon payment he could use it as he pleased. He could not be compelled to apply it to his own support. He had a right to earn his own living otherwise. The justice below, by necessary inference, found that he appropriated it to the support of his child in performance of a parental obligation. After recognizing the propriety of his action for more than six years, can he now, being the only person in interest, be allowed to reclaim to his own use the money spent by his sanction and impose upon his sister the burden of the support of his child for that length of time? Equitable principles estop him.

In none of the Maine cases cited *supra* was there room or occasion for applying the doctrine of equitable estoppel. In defining its purpose Whitehouse, J. in *Martin* v. *Maine Central Railroad*, 83 Me., 100 at 104, 21 A., 740, at page 741, said:

"Legal estoppels exclude evidence of the truth and the equity of the particular case to support a strict rule of law on grounds of public policy. Equitable estoppels are admitted on exactly the opposite ground of promoting the equity and justice of the individual case by preventing a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth. *Horn* v. *Cole*, 51 N. H. 287. Though preeminently a creature

of equity, the doctrine has been incorporated into the law, and there is now an increasing tendency to apply it in the decision of legal controversies in courts of law. *Kirk* v. *Hamilton*, 102 U. S. 68. It is no longer regarded as merely a technical rule of evidence, but a part of substantive law which regulates rights and duties."

Having in mind the literal instruction of the will to pay it over to the beneficiary individually, and assuming the use made of the income of the trust fund was a technical breach of its requirements, the Massachusetts Court has put the matter in a nutshell thus:

"A beneficiary who has consented to a breach of trust cannot thereafter complain of such breach." *Lannin* v. *Buckley*, 256 Mass., 78, 152 N. E., 71, citing *Pope* v. *Farnsworth*, 146 Mass., 339, 344, 16 N. E., 262; *Preble* v. *Greenleaf*, 180 Mass., 79, 61 N. E., 808; *Richards* v. *Keyes*, 195 Mass., 184, 80 N. E., 812.

We find no prejudicial error in the decree of the Supreme Court of Probate upon the points raised. Modification as to allowance of costs may be made in the discretion of the court below.

*Exceptions overruled.*