**Nora I. CECIL, Appellant,**

v.

**Martin G. CECIL and Cecelia B. Migliaccio, Appellees.**

Court of Appeals of Kentucky.

April 25, 1986.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court July 29, 1986.

Manley N. Feinberg, Louisville, for appellant.

Richard Frockt, Barnett & Alagia, Louisville, for appellees.

Before COMBS, LESTER and REYNOLDS, JJ.

COMBS, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court, dismissing a remainderman's complaint under a trust against the trustees for alleged improper termination of the trust.

J. Arnold Cecil [Arnold] was a successful businessman in the 1930's and 1940's, accumulating substantial assets. Shortly thereafter, Arnold ceased working and lived off his assets. During the 1970's Arnold had a great deal of difficulty with his finances and developed a severe alcohol problem. On several occasions, he travelled to Mexico where he drank heavily and made female friends whom he assisted financially. During that same time, a Louisville woman obtained control of Arnold's property. His brothers and sister instituted litigation to recover the assets for Arnold.

In order to protect himself from his own financial irresponsibility, Arnold decided to place his property in trust. On September 10, 1979, Arnold executed a trust agreement with himself as settlor-beneficiary and three of his siblings, Martin G. Cecil [Martin], Cecelia Bernadine Migliaccio [Bernadine] and Leo H. Cecil [Leo], as trustees. At that time, Leo was married to appellant, Nora Cecil [Nora].

The trust instrument directed Martin, Bernadine and Leo to manage the trust property and pay its income over to Arnold for life. The trust also provided that any principal or accrued income remaining in the trust at Arnold's death would be equally divided among the three trustees, or their heirs as remaindermen. After Arnold created the trust, Martin, a CPA, assumed control of Arnold's finances. Martin collected the rents from Arnold's income properties, managed Arnold's banking, invested Arnold's funds and paid his bills. Bernadine persuaded Arnold to move into her home in Florida.

Leo died approximately six and one-half months later, willing his entire estate to his wife, Nora. Under the terms of Arnold's 1979 trust, Nora became a remainderman at that point.

After Leo's death, Arnold decided to terminate the inter vivos trust and change the disposition of his property. At Arnold's direction, his trustees transferred the cash assets out of the trust and obtained a termination of trust agreement for the signatures of Arnold, Martin, Bernadine and Nora.

On June 20, 1980, Martin telephoned Nora and arranged to visit her the following day to have some papers signed concerning Arnold's trust. Martin testified he told Nora that Arnold wanted to terminate the trust and resume control of his own property and affairs. Martin reminded Nora that the trust was set up to safeguard Arnold's assets and told her that Arnold felt she could no longer assist him in carrying out the purposes of the trust.

Nora's account of the telephone conversation differs from Martin's. According to Nora, Martin told her that she needed to sign some papers in order to release money for Arnold to go to Mexico. Nora flatly denied any discussion pertaining to a termination of trust agreement, and claimed that Martin actively misrepresented the nature of the documents she signed.

The next morning, Martin travelled to Nora's home to obtain her signature on the termination of trust agreement. Martin and Nora spoke privately for some time, then drove into town to locate a notary public. During the drive, Martin handed Nora a copy of the agreement and suggested that she read it but Nora did not read the document. Several days later, Martin mailed a fully executed copy of the termination of trust agreement to Nora.

After the trust terminated, Martin continued to manage Arnold's real and personal property and likewise Bernadine continued to take care of Arnold in her Florida home. Arnold died on April 5, 1983, leaving a will which did not name Nora Cecil as an heir. Nora brought this action against Martin and Bernadine as trustees to set aside the termination of trust agreement in August of 1983.

After considering all the evidence, the lower court dismissed Nora's complaint. It found that Martin did not misrepresent the nature of the termination agreement to Nora, stating "Martin advised Nora that the document she was signing would terminate the trust and return control of the trust assets to Arnold, and that Nora understood this to be its effect." The court also observed that Nora had no present interest in the trust at the time of termination. Therefore, the trustees had no duty to keep her advised of the day-to-day trust activities and the termination agreement served as a complete accounting which triggered the statute of limitations under KRS 386.735.

Nora raises numerous issues on appeal which we need not consider since we agree with the lower court's conclusion that this action is time-barred under KRS 386.735. That section states that any action by a beneficiary against a trustee for breach of trust must be commenced within six months after receipt of the final account or statement, assuming full disclosure. Lacking full disclosure, the beneficiary's action against the trustee is barred after three years from the date of the final account.

■ We agree with the lower court's finding that because Nora had no present interest in the trust and the termination agreement completely dissolved her future interest, the agreement itself served as a complete final accounting which would trigger the KRS 386.735 statute of limitations. The record contains substantial evidence that Nora received a copy of the termination agreement within days of its execution. Furthermore, the parties agree that Nora commenced this action on August 1, 1983, more than three years after she received her copy of the termination agreement. Therefore, the lower court's ruling that this action is barred by the statute of limitations is not clearly erroneous and will not be disturbed by this court on appeal. Civil Rule 52.01.

Even if we thought Nora's action was timely filed, we would still affirm the ruling of the lower court. The record shows that Martin told Nora she was signing a termination of trust agreement to return the control of Arnold's assets to Arnold. On its face, the termination agreement states that the trustees and remaindermen "do hereby expressly renounce and disclaim all right, title, and interest in and to the grantor's property as more particularly described in Schedule A [of the trust agreement]." It is well-established law in Kentucky that "one who can read and has an opportunity to read a contract he signs must stand by the words of his contract." *Murphy v. Torstrick*, Ky., 309 S.W.2d 767, 769 (1958). *See also Gibson v. Dupin*, Ky., 377 S.W.2d 585 (1964); *Amlung v. First National Lincoln Bank of Louisville*, Ky., 411 S.W.2d 465 (1967).

■ In this case, Nora had every opportunity to read the termination agreement before signing it and to ascertain its contents for herself. Even if we thought that Martin misrepresented the nature of the termination agreement to Nora, Nora's negligence in failing to read the agreement before signing it precludes her relying on Martin's oral statements as grounds to set the agreement aside. *See Cline v. Allis-Chalmers Corporation*, Ky.App., 690 S.W.2d 764 (1985). The lower court did not err in refusing to set aside the termination agreement.

The judgment of the Jefferson Circuit Court is affirmed.

All concur.