MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:      2017 ME 188
Docket:        Cum-15-272
Argued:        March 1, 2016
Decided:       September 5, 2017
Revised:       December 7, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:    SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and HUMPHREY, JJ.
Dissent:     HJELM and JABAR, JJ.

## IN RE GEORGE PARSONS 1907 TRUST

SAUFLEY, C.J.

[¶1]  Thomas Maxwell appeals from a summary judgment entered by the Cumberland County Probate Court (*Mazziotti, J.*) in favor of David Gourevitch, a qualified beneficiary of the George Parsons 1907 Trust, on his complaint for a declaratory judgment that Maxwell is not a beneficiary of the Trust.  Because we agree with Maxwell that the undisputed facts establish that Gourevitch's claim was barred by the statute of limitations, we vacate the judgment.

## I.  BACKGROUND

[¶2]  The summary judgment record contains the following facts, which are not in dispute.  *See Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 7, 150 A.3d 793.  On November 1, 1907, George Parsons executed an indenture creating the George Parsons 1907 Trust.  Parsons died on December 4, 1907,

without having amended or revoked the Trust. The Trust provides that it will terminate twenty-one years after the death of the last member of a group of named individuals. The last person in that group died in 2002. Thus, the Trust will terminate in 2023.

[¶3] The dispute in this case has its genesis in the death of a descendant of George Parsons—Philippa Wistrand—in May 1990, raising the question as to who was to receive her share of the Trust distributions. Philippa was a beneficiary of the Trust and was the unmarried, biological mother of Thomas Maxwell, who was born in 1963 and was adopted by Philippa's sister, Sylvie Maxwell.[1] Sylvie was also a descendant of George Parsons and a beneficiary of the Trust in the same branch of the family tree. Pursuant to the applicable portion of paragraph 5 of the Trust, Philippa's share of the Trust income was to be paid to her surviving "issue" upon her death, or if there was none, to any surviving siblings or their issue if a sibling was already deceased, with other provisions applying if no siblings survived. Therefore, upon Philippa's death, a question arose as to whether her share of the income was to be paid to

---

[1] Thomas Maxwell's name at birth was Christian Wistrand, but he was renamed when he was adopted by Sylvie Maxwell.

3

Thomas Maxwell as her surviving issue even though he was a nonmarital child,[2] or to Sylvie as her surviving sister.

[¶4]   At the recommendation of the Trustees, in September and November 1990, Sylvie executed documents to release any rights she had in Philippa's share of the Trust income and assign those rights to Maxwell.  In 1990, the Trustees began distributing income to Maxwell.

[¶5]  In 1994, addressing a separate matter, the Trustees petitioned the Cumberland County Probate Court for instructions on whether adopted children were included as beneficiaries of the Trust.  Although Maxwell had been adopted by Sylvie and received notice of the petition, the Trustees agreed that the court's decision would not "affect" him, and he did not participate in the proceeding.  In the resulting 1995 judgment, the court (*D. Childs, J.*) determined that the provisions of the Trust should be interpreted according to "the rules of construction set by common law during the lifetime of George Parsons."  Applying the common law rules of construction in effect in 1907, the court concluded that Parsons did not intend to include adopted children as beneficiaries, and it instructed the Trustees

---

[2] In this opinion, we use the term "nonmarital child" rather than the outdated phrase "child born out of wedlock."

that the two adopted children who were respondents in that matter were not beneficiaries.

[¶6] In 1996, after the court had issued that judgment, one of the Trustees became concerned that no formal decision had been made about whether Maxwell was a beneficiary entitled in his own right to Philippa's share of income or whether he was entitled to receive income only by virtue of the assignments executed by Sylvie. On July 26, 1996, the Trustees passed a resolution recognizing Maxwell's status as Philippa's biological son and as a beneficiary of the Trust.[3] Maxwell will continue to receive monthly and annual distributions of Trust income while the Trust continues, and will receive ten percent of the corpus of the Trust when the Trust terminates in 2023 if he is then living.

[¶7] In April 2014, Gourevitch filed a complaint in the Cumberland County Probate Court requesting a declaratory judgment that Maxwell, as a nonmarital child, cannot be a beneficiary of the Trust. Gourevitch is a descendant of George Parsons under the same branch of the family tree as Philippa, Sylvie, and Maxwell and served as a Trustee from 1999 to 2002.

---

[3] Gourevitch averred in his affidavit, which he referenced in his statement of material facts, that after Sylvie died in 2012, the Trustees "voted to go ahead and make distributions" to Maxwell as a beneficiary. He argues on appeal that this is the date when distributions became wrongful. By that date, however, Maxwell had already been receiving benefits since 1996 based on the Trustees' determination of his status as Philippa's biological son—the status that Gourevitch now challenges.

5

[¶8] Gourevitch also alleged in his complaint that Maxwell is not a beneficiary of the Trust because he is an adopted child and requested a declaratory judgment to that effect. As the Probate Court (*Mazziotti, J.*) ultimately noted, however, "Maxwell's status as an adopted child of Sylvie Maxwell is of no consequence in this proceeding" because, as a result of the court's 1995 judgment, adopted children are not beneficiaries. Neither party challenges that conclusion on appeal.

[¶9] Gourevitch moved for a summary judgment, *see* M.R. Civ. P. 56(a),[4] arguing that the terms of the Trust entitled him to a judgment as a matter of law because Maxwell was indisputably born to Philippa when she was not married. Maxwell opposed Gourevitch's motion and filed a cross-motion for a summary judgment.[5] He argued, among other things, that Gourevitch's claim was barred by the statute of limitations.

[¶10] In May 2015, the court denied Gourevitch's motion and granted Maxwell's cross-motion for a summary judgment based on the statute of limitations. Although the court determined, as a matter of law, that the terms

---

[4] "Rule 56 of the Maine Rules of Civil Procedure governs procedure in all formal probate and civil proceedings in the Probate Courts." M.R. Prob. P. 56.

[5] The Trustees also filed an opposition and cross-motion for a summary judgment supporting Maxwell's position. In its final judgment, the court denied the Trustees' motion, and they do not appeal.

of the Trust did not include nonmarital children as beneficiaries, the court concluded that Gourevitch's cause of action to challenge Maxwell's status was barred by the statute of limitations because it accrued, at the latest, in 1996, when the Trustees formally recognized Maxwell as Philippa's son and as a beneficiary of the Trust. In reaching that conclusion, the court rejected Gourevitch's argument that each monthly payment to Maxwell constituted a breach of fiduciary duty giving rise to a new cause of action. The court likened Gourevitch's argument to the common law "continuing tort doctrine," *McLaughlin v. Superintending Sch. Comm. of Lincolnville*, 2003 ME 114, ¶ 23 n.6, 832 A.2d 782, and concluded that the doctrine did not apply here because the 1996 resolution was a discrete action that created the harm of which Gourevitch complained. The court concluded that Gourevitch's claim therefore was outside the six-year limitations period, *see* 14 M.R.S. § 752 (2016), and that Maxwell was entitled to a judgment as a matter of law on that basis.

[¶11] On May 19, 2015, Gourevitch filed a timely motion to alter or amend the judgment, *see* M.R. Civ. P. 59(e),[6] based on a decision that the Supreme Court of the United States had issued on the previous day holding

---

[6] "Rule 59 of the Maine Rules of Civil Procedure governs procedure in all formal probate and civil proceedings in the Probate Courts." M.R. Prob. P. 59.

that a new cause of action accrues each time a trustee breaches a continuing fiduciary duty owed to a beneficiary "to monitor investments and remove imprudent ones." *See Tibble v. Edison Int'l*, 575 U.S. ---, 135 S. Ct. 1823, 1828-29 (2015). Gourevitch contended that his complaint was timely because the Trustees had a continuing duty to distribute income only to beneficiaries, and therefore each payment to Maxwell constituted a new injury.

[¶12] While the motion to alter or amend was pending, Gourevitch appealed based on the statute of limitations issue, and Maxwell cross-appealed the court's separate determination that, as a nonmarital child, he was not a beneficiary. *See* 18-A M.R.S. § 1-308 (2016); M.R. App. P. 2. The court then granted Gourevitch's Rule 59 motion and entered an amended summary judgment in his favor.[7] Accordingly, the court's final judgment integrates its earlier determination that, as a matter of law, Maxwell is not a beneficiary of the Trust, and its later conclusion, based on *Tibble*, that Gourevitch's claim was timely.

[¶13] Although the court's ultimate judgment was in Gourevitch's favor and he is defending it, in most respects, on this appeal, he remains an

---

[7] With respect to the pending appeal, in response to the Trustees' motion to stay, we enlarged the time for the Probate Court to transmit its record to twenty-one days after it disposed of all pending post-judgment motions. *See* M.R. App. 2(b)(3), (4), 3(b)(4).

appellant because he was the first party to file a notice of appeal. *See* M.R. App. P. 2(c)(3).

## II. DISCUSSION

[¶14]  A party is entitled to summary judgment when the statements of material fact and referenced evidence establish that there is no genuine issue of material fact and that a party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c).  We review de novo the grant of a motion for summary judgment. *Fiduciary Tr. Co. v. Wheeler*, 2016 ME 26, ¶ 8, 132 A.3d 1178.  A genuine issue of fact exists if "sufficient evidence supports a factual contest to require a factfinder to choose between competing versions of the truth at trial." *Baillargeon v. Estate of Daigle*, 2010 ME 127, ¶ 12, 8 A.3d 709 (quotation marks omitted).

[¶15]  Maxwell argues that Gourevitch's claim for a declaratory judgment, commenced in 2014, is barred by 14 M.R.S. § 752, which provides that "civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards."  A cause of action accrues when a claimant sustains a "judicially cognizable injury." *Estate of Miller*, 2008 ME 176, ¶ 25, 960 A.2d 1140 (quotation marks omitted).  When the relevant facts are not in dispute, determining *when* a cause of action accrued and whether a

9

claim is time-barred are legal questions subject to de novo review. *See Estate of Weatherbee*, 2014 ME 73, ¶ 14, 93 A.3d 248; *McLaughlin*, 2003 ME 114, ¶ 12, 832 A.2d 782.

[¶16] As courts of other jurisdictions have held, a cause of action based on the breach of a trust accrues, and the statute of limitations begins to run, at the time of the breach. *See Renz v. Beeman*, 589 F.2d 735, 743 (2d Cir. 1978) (holding that the statute of limitations was measured from the time of the breach of the trust), *cert. denied*, 444 U.S. 834 (1979); *Harris Tr. Bank of Ariz. v. Superior Court*, 933 P.2d 1227, 1231 (Ariz. Ct. App. 1996) (holding that the statute of limitations began to run when the trustee "violate[d] one or more of his obligations to the beneficiary or repudiate[d] the trust"); *see also Cecil v. Cecil*, 712 S.W.2d 353, 355 (Ky. Ct. App. 1986) (holding that the statute of limitations began to run when a beneficiary received written notice of a termination of trust agreement); *cf. Tersavich v. First Nat'l Bank & Tr. Co. of Rockford*, 551 N.E.2d 815, 819-20 (Ill. App. Ct. 1990) (holding that the statute of limitations on an illegitimate child's claim seeking construction of a trust runs from the later of (1) the child's reaching the age of majority or (2) the

time when the child knows, or should know, that the trustee has "repudiated, disavowed or acted in hostility to the trust" (quotation marks omitted)).[8]

[¶17]  In some circumstances, determining the date of the breach may be complicated, such as when a beneficiary claims that a trustee has imprudently retained an investment.  *See Tibble*, 575 U.S. ---, 135 S. Ct. at 1828-29.  For good reason, the Supreme Court of the United States has held that a trustee has an ongoing duty to monitor the ever-changing performance of investments, which may bring the date of accrual within a statute of limitations.  *See id.*

[¶18]  There is no legal basis, however, to support a continuing duty to monitor a person's status as a beneficiary of a heritable trust.  To the contrary, as the Court of Appeal of California held, a beneficiary's challenge to his proportion of trust income may be barred if proportionate shares have been paid for the requisite limitation period.  *See Getty v. Getty*, 187 Cal. App. 3d 1159, 1168-69 (Cal. Ct. App. 1986).  In *Getty*, a beneficiary's claim was barred because he did not take legal action until after distributions had been

---

8  *See also* George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 951, at 638 (rev. 2d ed. 1995) ("To cause the Statute to begin running during the life of the trust there must be some unequivocal act in violation of the duties of the trustee . . . .").

made in consistent proportions for about twenty-five years following his attainment of adulthood. *Id.*

[¶19] We have also previously held that statutes of limitations begin to run when discrete events make potential litigants aware of possible claims. Specifically, we held that a health care trust's cause of action for unjust enrichment against its beneficiary accrued upon the beneficiary's settlement of an automobile insurance claim and did not continue to accrue each time monthly annuity payments to the injured beneficiary were made pursuant to the terms of that settlement. *Me. Mun. Emps. Health Tr. v. Maloney*, 2004 ME 51, ¶¶ 2-3, 10, 846 A.2d 336.

[¶20] Nor do Maine's statutes establish any "continuing" duty to determine who is a beneficiary. A trustee may fulfill the duty to administer a trust "in accordance with its terms and purposes," 18-B M.R.S. § 801 (2016), and "considering . . . distributional requirements," 18-B M.R.S. § 804 (2016), by determining, upon the death of a beneficiary, whether there are any new beneficiaries and who those beneficiaries are. The determination of beneficiaries is not a decision that requires repeated reconsideration simply because the trust calls for the periodic distribution of trust income.

[¶21]  Having a fixed date of accrual is consistent with the purpose of statutes of limitations "to provide eventual repose for potential defendants and to avoid the necessity of defending stale claims."  *Angell v. Hallee*, 2012 ME 10, ¶ 8, 36 A.3d 922 (quotation marks omitted).  To hold to the contrary would allow a trust beneficiary to initiate a court challenge at any time after another beneficiary is determined, as long as income distributions are being made.  Such a holding would improperly elevate each ordinary income distribution to a fresh determination of beneficiary status and would result in a statute of limitations that, for no meaningful reason, may apply differently to trusts that call for income distribution as compared with trusts that do not.

[¶22]  Turning to the facts at issue here, as the Probate Court held before reaching a new holding based on *Tibble*, 575 U.S. ---, 135 S. Ct. at 1828-29, any cause of action arising from the determination that Maxwell was a beneficiary of the Trust accrued no later than 1996 when a formal resolution was passed recognizing Maxwell as Philippa's biological son and determining that Maxwell was a legally cognizable beneficiary.  That is the event that triggered the running of the six-year statute of limitations.  *See* 14 M.R.S. § 752.

[¶23]  The only way Gourevitch's complaint could proceed would be if the statute of limitations were tolled.  The common law discovery rule tolls the statute of limitations only if there is "a fiduciary relationship between the plaintiff and defendant, the plaintiff must rely upon the defendant's advice as a fiduciary, and the cause of action [is] virtually undiscoverable absent an independent investigation that would be destructive of the fiduciary relationship."  *Nevin v. Union Tr. Co.*, 1999 ME 47, ¶ 25, 726 A.2d 694.

[¶24]  The pertinent facts are these.  Maxwell's biological mother died in 1990.  His adoptive mother released her then additional share to Maxwell voluntarily.  In 1994, the trustees sought clarification from the Cumberland County Probate Court about whether adopted children could be beneficiaries pursuant to the terms of the trust, and the court determined that they could not.

[¶25]  In 1996, the trustees passed a formal resolution determining that Maxwell was Philippa's biological son and was a beneficiary of the Trust.  Thereafter, Maxwell continued to receive regular payments as the child of his biological mother.  These were the circumstances that existed when Gourevitch became a trustee in 1999.

[¶26] Gourevitch was a trustee from 1999 to 2002, during which time he had the full ability to determine why Maxwell was receiving Trust income distributions while the woman Gourevitch believed to be Maxwell's mother was still living—a circumstance that is fully contrary to the Trust's provision that "in no case does issue take till the death of the parent whom it represents." Instead, Gourevitch participated as a trustee in continuing to make distributions to Maxwell. He does not receive the benefit of tolling because he had both the reason and the ability to discover the claim when he was serving as a trustee but did not commence legal action until 2014— twelve years after ending his service as a trustee and eighteen years after the date of the Trustees' resolution declaring Maxwell to be a beneficiary as the child of Philippa. *See id.*

[¶27] Because the statute of limitations has run, we do not reach Maxwell's challenge to the Probate Court's ruling, on the merits of Gourevitch's complaint, that Maxwell would not have been a beneficiary of the Trust had the challenge been made in a timely manner. We vacate the Probate Court's amended judgment and remand the matter for the court to deny Gourevitch's motion for summary judgment and grant Maxwell's motion for summary judgment.

The entry is:

> Judgment vacated. Remanded for the court to deny Gourevitch's motion for summary judgment and grant Maxwell's motion for summary judgment.

---

HJELM, J., with whom JABAR, J., joins, dissenting.

[¶28] Today, the Court concludes that a trust beneficiary is not entitled to commence a cause of action arising from allegedly wrongful distributions of trust income made within the limitations period, so long as the trustees' initial decision to begin those ongoing distributions is made outside the limitations period. Court's Opinion ¶¶ 22, 27. In my view, this holding is contrary to established Maine law and the principle that a trustee is bound by the highest ongoing fiduciary duties of good faith and loyalty to trust beneficiaries. I therefore conclude, as a matter of law, that this action is not barred by the statute of limitations. Because I also conclude that the summary judgment record contains genuine issues of material fact on the merits of this action, I would vacate the summary judgment entered by the Cumberland County Probate Court (*Mazziotti, J.*) and remand for further proceedings. For these reasons, I respectfully dissent.

[¶29]  I will first address the reasons why the statute of limitations does not bar David Gourevitch's claim for a declaratory judgment.  I will then discuss the factual issues revealed in the record that preclude a determination, as a matter of law, that Thomas Maxwell, a nonmarital child, is a beneficiary of the George Parsons Trust—factual disputes that require this case to be remanded for further proceedings in the Probate Court.

A.  Statute of Limitations

[¶30]  Title 14 M.R.S. § 752 (2016) provides that "civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards."  As the Court states, a cause of action based on a breach of a trust accrues at the time of the breach, Court's Opinion ¶ 16, because that is when the claimant sustains a "judicially cognizable injury," *Estate of Miller*, 2008 ME 176, ¶ 25, 960 A.2d 1140 (quotation marks omitted).

[¶31]  The Probate Court concluded, as a matter of law, that Gourevitch's 2014 complaint was timely because a new breach occurred each time the Trustees made a monthly distribution of income—allegedly wrongfully—to Maxwell.  The court's conclusion was predicated on its determination that trustees in Maine have a continuing duty, accompanying *each distribution* to a beneficiary, to ensure that the recipient is entitled to that

distribution.  In my opinion, that legal assessment of the continuing nature of the Trustees' duties is correct because it is supported by Maine law and is consistent with the essential nature of a trust and a trustee's fiduciary duties.

[¶32]  "A trust . . . is a fiduciary relationship with respect to property . . . subjecting the person who holds title to the property to duties to deal with it for the benefit of" another.  Restatement (Third) of Trusts § 2 (Am. Law Inst. 2003).  Because of "the intimate nature of the [trustee] relationship," and "the great control of a trustee over the property of the beneficiary," the law demands of a trustee "an unusually high standard of ethical or moral conduct." Amy Morris Hess et al., *The Law of Trusts and Trustees* § 1 at 5 (3d ed. 2007). Indeed, the fiduciary duties of a trustee are "the highest known to the law."  *La Scala v. Scrufari*, 479 F.3d 213, 219 (2d Cir. 2007) (quotation marks omitted); *see also Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) ("Not honesty alone, but the punctilio of an honor the most sensitive, is . . . the standard of [trustee] behavior.").

[¶33]  Within that "unusually high standard" of conduct and fidelity, Hess et al., *The Law of Trusts and Trustees* § 1 at 5, "the extent and limits of [a trustee's] authority" are defined by the trust itself, *In re Marble*, 136 Me. 52, 56, 1 A.2d 355 (1938) (quotation marks omitted).  Accordingly, with respect

to a trustee's specific responsibilities, the trustee is "bound, in the first place, *to conform strictly to the directions of the trust*. This is in fact the corner-stone upon which all other duties rest, the source from which all other duties take their origin. . . . If the trust is express, created by deed or will, *then the provisions of the instrument must be followed and obeyed*." *Id.* (emphases added) (quotation marks omitted). Additionally, in fulfilling the primary obligation to execute the trust's directions, a trustee is bound to act consistently with duties defined by statute. Specifically, trustees have a duty to "administer the trust in good faith, *in accordance with its terms and purposes* and the interests of the beneficiaries and in accordance with [the Maine Uniform Trust Code]." 18-B M.R.S. § 801 (2016) (emphasis added). In addition, trustees have a duty to "administer the trust as a prudent person would, by considering the purposes, terms, *distributional requirements* and other circumstances of the trust." 18-B M.R.S. § 804 (2016) (emphasis added).

[¶34] A trustee's statutory duty to administer a trust "in good faith," "as a prudent person would," necessarily encompasses the duty to ascertain that each individual whom the trustees designate to receive trust income is actually entitled to those payments pursuant to the terms of the trust—in other words, that the settlor intended to include that person as a beneficiary.

*See* Restatement (Third) of Trusts § 76 (Am. Law Inst. 2007) (stating that a trustee's duty to administer a trust "in good faith, in accordance with the terms of the trust" includes the responsibility to "ascertain[] . . . the beneficiaries and purposes of the trust"); *Id*. § 77 cmt. c (stating that to fulfill the duty of prudence, a trustee must "acquire a reasonable understanding of the terms of the trust" and "the rights and interests of the beneficiaries"); George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 583 at 348-49 (rev. 2d ed. 1980) ("After a trustee has accepted the trust . . . it becomes his duty to carefully examine the terms of the trust and the trust assets in order to determine exactly what property forms the subject-matter of the trust, *who are the beneficiaries*, and what are the trustee's duties with respect to the trust property and the beneficiaries." (emphasis added) (footnotes omitted)).

[¶35]   Contrary to the Court's analysis, however, a trustee's initial determination of who is a "beneficiary" is not the end of the matter.  We have explained that a trustee's duty of prudence in Maine is "ongoing."  *Nevin v. Union Tr. Co.*, 1999 ME 47, ¶¶ 26-28, 726 A.2d 694.  A trustee is therefore not discharged from her fiduciary duties when that trustee simply makes an initial or interim discrete decision.  *See* George Gleason Bogert & George Taylor

Bogert, *The Law of Trusts and Trustees* § 541 at 160 (rev. 2d ed. 1978, replacement vol. 1993) ("The trustee must *continually* demonstrate good faith in administering the trust and in dealing with beneficiaries." (emphasis added)). Rather, the fiduciary duties defined by statute attach to *each action* a trustee takes in executing the terms of the trust, including each decision— whether ministerial or otherwise—to distribute trust income to a particular person.

[¶36] In addition to being a violation of a trustee's statutory duties, a trustee's distribution of trust income to an individual who is not entitled to receive the payments is a violation of that trustee's primary obligation "to conform strictly to the directions of the trust." *In re Marble*, 136 Me. at 56, 1 A.2d 355 (quotation marks omitted); *see also* George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 814 at 315 (rev. 2d ed. 1981) (stating that a trustee has "an *unconditional obligation* to follow the applicable provisions regarding payments and distributions" (emphasis added)). If a trustee repeatedly makes distributions to an improper recipient, then with each subsequent payment the trustee acts in derogation of the terms of the trust not only by allowing an ineligible person to participate, but also by diminishing the amount of the payments that the true beneficiaries are

entitled to receive because of the expanded pool of recipients. In other words, *each time* a trustee makes an improper payment, the trustee breaches his or her fiduciary duty owed to the true beneficiaries, causing a new injury to them, because the amount of the distribution they receive is less than it should be. The injury does not end when the trustees first decide to make those ongoing payments.

[¶37] Accordingly, based on fundamental principles of trust law, I conclude that even after a trustee makes an initial distributional decision, that trustee has a fiduciary duty to ensure, on an *ongoing* basis, that income is being distributed only to proper beneficiaries consistent with the terms of the trust. Consequently, the accountability of trustees to the beneficiaries does not end when they make that initial distributional decision.[9] Rather, they remain liable for the ongoing actions placed in motion by their initial decision.

---

[9] *Renz v. Beeman*, which the Court cites as support for the proposition that the statute of limitations begins to run at the time of the initial breach, Court's Opinion ¶ 16, is inapposite because that case involves a claim based on a one-time event, rather than ongoing or repeated actions in derogation of a trust, as is the case here. 589 F.2d 735, 743, 748-49 (2d Cir. 1978) (concluding that a one-time breach of trust occurred, and the statute of limitations began to run, on the date when a trustee purchased certain shares of stock). The cases cited by the Court as further support for this point are not helpful to an analysis of the case at bar. *See Harris Tr. Bank of Ariz. v. Superior Court*, 933 P.2d 1227, 1231-32 (Ariz. Ct. App. 1996) (addressing the question of whether a particular statute of limitations applied *at all*, not when it began to run); *Cecil v. Cecil*, 712 S.W.2d 353, 355 (Ky. Ct. App. 1986) (applying a unique statute of limitations where the triggering event was not an alleged breach of trust, but rather the beneficiary's "receipt of [a] final account or statement").

*Getty v. Getty*, 187 Cal. App. 3d 1159 (Cal. Ct. App. 1986), on which the Court also relies, Court's Opinion ¶ 18, similarly is inapposite. That case involved a beneficiary's claim to *reform* a trust to increase his share of trust income and principal so that it would be equal to that of his

[¶38]  In their discussion of the statute of limitations and their analysis of when Gourevitch's cause of action accrued, the parties have focused on *Tibble v. Edison International*, 575 U.S. --, 135 S. Ct. 1823 (2015).  *Tibble* itself does not bear directly on this issue but, to the extent that it does provide guidance here, it supports the conclusion that the Trustees have an ongoing duty to ensure that the interests of the beneficiaries are protected.

[¶39]  The *Tibble* Court considered "whether a fiduciary's allegedly imprudent retention of an investment is an 'action' or 'omission' that triggers the running of the 6-year limitations period" applicable to claims brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. §§ 1001-1461 (LEXIS through Pub. L. No. 115-45).[10]  *Tibble*, 575

---

brothers, *Getty*, 187 Cal. App. 3d at 1167-68—it was not a case based on an alleged breach of trust. An intermediate-level court held that the beneficiary's action for reformation was time-barred because the trustees had "distributed income to the beneficiaries *in exactly the amounts required under the declaration of trust*" for over forty-two years, and the beneficiary had actual or constructive knowledge of the settlors' alleged mistake for thirty-nine years before filing suit. *Id.* at 1169 (emphasis added).  By seeking reformation of the trust, the beneficiary in *Getty* expressly acknowledged that there was no continuing violation because, as the court found, the trustees were distributing income in the amounts required by the trust. *See id.*  Rather, the question was whether the terms of the trust that mandated those distributions *should be altered*. *See id.*

Conversely, here, Gourevitch sued for a declaratory judgment to determine whether the Trustees' repeated and ongoing distributions of trust income to Maxwell violate the *actual* terms of the Trust.  Because *Getty* did not involve ongoing conduct by the trustees that was in violation of the trust, it has no bearing on whether Gourevitch's cause of action accrues anew with each income distribution.

[10]  The statute of limitations on ERISA claims provides, in pertinent part, that "[n]o action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation . . . after the earlier of . . . six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the

U.S. --, 135 S. Ct. at 1826.  The Court stated "that an ERISA fiduciary's duty is derived from the common law of trusts," *id.* at 1828 (quotation marks omitted), and explained that

> under trust law, a fiduciary normally has a *continuing duty of some kind to monitor investments and remove imprudent ones*.  A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones.  In such a case, so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely.

*Id.* at 1828-29 (emphasis added).  Therefore, although *Tibble* involved the fiduciary duty to prudently oversee trust investments rather than the duty to distribute trust income only to proper beneficiaries, the opinion confirms the ongoing nature of the fiduciary duties that trustees are bound to discharge.

[¶40]  Further, despite the Court's analytical reliance on *Maine Municipal Employees Health Trust v. Maloney*, 2004 ME 51, 846 A.2d 336, Court's Opinion ¶ 19, that case does not support the Court's view that the legal responsibility of a trustee is limited to the trustee's initial distributional decision—in fact, it does not involve fiduciary responsibilities at all.  Rather, in *Maloney*, a health care plan paid medical expenses incurred by a covered person who had sustained injuries arising from another person's tortious

---

fiduciary could have cured the breach or violation."  29 U.S.C.S. § 1113 (LEXIS through Pub. L. No. 115-45).

conduct and who later settled the resulting tort claim. *Maloney*, 2004 ME 51, ¶ 2, 846 A.2d 336. Seven years after the settlement, the plan brought a claim against the covered individual alleging unjust enrichment—not breach of fiduciary duty—and seeking reimbursement of the medical expenses it had paid. *Id.* ¶¶ 3-4. We rejected the plan's argument that its claim was not time-barred because it "accrue[d] anew with each monthly annuity payment," concluding that the injury had in fact occurred when the participant first settled his claim against the tortfeasor. *Id.* ¶¶ 9-10. The litigants in *Maloney*, however, were merely parties to a health insurance contract, *see id.* ¶ 6, and there is *no* suggestion that the covered individual owed *any* fiduciary duty to the plan, let alone a continuing duty. Rather, the alleged wrongdoer, namely, the insured, was a health care plan participant—not a trustee—who merely received periodic payments from a third party. *See id.* ¶ 2.

[¶41] Conversely, here, the Trustees *are* fiduciaries and *are* bound by continuing obligations that run to Gourevitch as a beneficiary of the Trust. Accordingly, the Trustees' repeated decisions to pay Trust income to Maxwell, allegedly in violation of their continuing fiduciary obligations in the administration of the Trust, represent discrete "judicially cognizable injur[ies]," *Estate of Miller*, 2008 ME 176, ¶ 25, 960 A.2d 1140 (quotation

marks omitted), each giving rise to a new cause of action. *Maloney* is therefore inapplicable.

[¶42] For these reasons, I conclude that a new cause of action accrued each time the Trustees made a distribution of Trust income to Maxwell, because he allegedly was not entitled to those payments pursuant to the terms of the Trust. With each such payment, the true beneficiaries allegedly sustained a new injury, resetting the clock for purposes of the statute of limitations. This conclusion is the product of Maine law and the law of trusts that establish the continuing nature of a trustee's duty to comply with the provisions of a trust, including its distributional requirements.[11] Accordingly, because the undisputed facts establish that Gourevitch commenced this action for a declaratory judgment challenging Maxwell's beneficiary status within six years of at least one of the Trustees' monthly payments to Maxwell, the claim is timely.[12] *See McLaughlin v. Superintending Sch. Comm. of Lincolnville*,

---

[11] I agree with the Court that, as the Probate Court concluded, Gourevitch is not entitled to the benefit of the common law discovery rule, which tolls the statute of limitations "until the plaintiff discovers or reasonably should have discovered the cause of action." *Nevin v. Union Tr. Co.*, 1999 ME 47, ¶ 25, 726 A.2d 694; Court's Opinion ¶¶ 23-26. My conclusion that Gourevitch's claim is timely does not rely on the application of the common law tolling rule.

[12] Contrary to the Court's statement, Court's Opinion ¶ 21, a holding that Gourevitch's claim is timely would not detract from the essential purpose of statutes of limitations "to provide eventual repose for potential defendants and to avoid the necessity of defending stale claims," *Angell v. Hallee*, 2012 ME 10, ¶ 8, 36 A.3d 922 (quotation marks omitted). Rather, a trustee would enjoy that repose when any other alleged wrongdoer would, namely, six years after the last injury she

2003 ME 114, ¶¶ 11-12, 19, 832 A.2d 782 (explaining that summary judgment on a statute of limitations defense is proper when there is no genuine issue of material fact as to whether the cause of action accrued within the limitations period).

B.    Status of Nonmarital Children

[¶43]  I next address the merits of the parties' arguments because if—as I conclude—Gourevtich's claim is not time-barred but the undisputed facts nevertheless were to establish that Maxwell is a proper beneficiary of the Trust, then this matter would have to be remanded for entry of a summary judgment for Maxwell in any event.  For the following reasons, I disagree with that result.  Rather, I conclude that neither party is entitled to a judgment as a matter of law on the issue of whether Maxwell is a proper beneficiary, and I would therefore remand this matter to the Probate Court for further proceedings.

[¶44]  The specific issue is whether the court erred by concluding, as a matter of law, that the terms used to identify Trust beneficiaries—"issue" and "descendants"—must be construed to omit nonmarital children.

---

participated in creating, which here consisted of allegedly making a wrongful payment of trust assets.

[¶45] "The cardinal rule is to give effect to the intention of the testator gathered from the language of the will [creating the trust] . . . ." *Me. Nat'l Bank v. Petrlik*, 283 A.2d 660, 664 (1971). The court must determine a settlor's intent at the time the trust was created, without regard to sensibilities that may have evolved later.[13] *See id.*; *New England Tr. Co. v. Sanger*, 151 Me. 295, 301, 118 A.2d 760 (1955). "The intent of the settlor, as determined by unambiguous language in the [trust], is a question of law that we review de novo." *Fiduciary Tr. Co. v. Wheeler*, 2016 ME 26, ¶ 9, 132 A.3d 1178 (quotation marks omitted). Conversely, if the trust contains an ambiguity, a court's determination of the settlor's intent is a question of fact to be adjudicated in the trial court. *See Newick v. Mason*, 581 A.2d 1269, 1273-74 (Me. 1990). If "a showing of *all* the relevant extraneous circumstances provides no basis for a fair conclusion as to the meaning" of a particular term, a court may apply the "presumptive" meaning—namely, a meaning based on common law principles, *Ziehl v. Me. Nat'l Bank*, 383 A.2d 1364, 1372 (Me. 1978), *superseded by statute on other grounds*, P.L. 1979, ch. 540, § 1 (effective Jan. 1, 1981)

---

[13] For this reason, the rule of construction in the Maine Probate Code, which states that "persons born out of wedlock are included in class gift terminology and terms of relationship in wills and in trust instruments," does not apply to these proceedings because that statute became effective in 1981, long after the Trust was created. P.L. 1979, ch. 540, § 1 (effective Jan. 1, 1981) (codified as amended at 18-A M.R.S. § 2-611 (2016)); *see also Hall v. Cressey*, 92 Me. 514, 516, 43 A. 118 (1899) (stating that "[m]odern sentiment[s] as expressed in modern statutes" have no bearing on the interpretation of an instrument executed before the statutes were adopted).

(codified as amended at 18-A M.R.S. § 2-611 (2016)), so long as the presumption was applied during the settlor's lifetime and "may be supposed to have been in the mind of the testator at the time" the will creating the trust was made. *Petrlik*, 283 A.2d at 664.

[¶46] Paragraph 5 of the Trust—which is the source of Maxwell's claimed interest—provides that a deceased descendant's share of Trust income is payable to his or her "issue." In the context of a summary judgment analysis, the question therefore is whether a nonmarital child such as Maxwell indisputably must be considered "issue" of his biological mother within the meaning of the Trust.

[¶47] We have previously stated that the term "issue" is ambiguous and that its meaning varies according to the intention of the settlor who uses it. *Gannett v. Old Colony Tr. Co.*, 155 Me. 248, 249, 153 A.2d 122 (1959); *Fiduciary Tr. Co. v. Brown*, 152 Me. 360, 371-72, 131 A.2d 191 (1957); *Union Safe Deposit & Tr. Co. v. Dudley*, 104 Me. 297, 306, 72 A. 166 (1908). Although, here, Parsons expressly defined "issue" in Paragraph 8 of the Trust to mean "all descendants," that provision fails to provide any additional definitional meaning because, as we have noted in the past, the term "issue" is synonymous with the term "descendants." *Fiduciary Tr. Co.*, 152 Me. at

371-72, 131 A.2d 191; *see also Morse v. Hayden*, 82 Me. 227, 230, 19 A. 443 (1889) (stating that "issue . . . is synonymous with lineal descendant") (quotation marks omitted); *Union Safe Deposit & Tr. Co.*, 104 Me. at 307, 72 A. 166 (stating that "the word 'issue' is to be interpreted according to its primary signification as importing descendants"); *Newick*, 581 A.2d at 1273 ("'Issue' is commonly interpreted as meaning '[a]ll persons who have descended from a common ancestor.'" (quoting *Black's Law Dictionary* 746 (5th ed. 1979)).  As the Probate Court noted, the definition of "issue" included in the Trust merely indicates that the terms "issue" and "descendants" had "like meanings for the purposes of defining the beneficiaries."  Because the term "issue" is ambiguous, and because the term "descendants"—which Parsons used to define "issue"—is merely a synonym that does not provide additional definitional content, neither term has a fixed meaning that can be discerned as a matter of law.

[¶48]  The Trust further states in Paragraph 8 that "[d]istribution of income among the *issue* of a . . . descendant . . . *shall mean* that such income shall be paid in equal shares to his or her *children*."  (Emphases added.)  For reasons similar to those stated above, this provision does not allow any determination of the meaning of the term "issue" as a matter of law because

the term "children," like the term "issue," is ambiguous and must be construed based on Parsons's intent when the Trust was created. *See Ziehl*, 383 A.2d at 1369-70 (stating that the word "children" is ambiguous because in general usage it is "associated with more than one category of external objects"); *In re Woodcock*, 103 Me. 214, 216-17, 68 A. 821 (1907) (stating that the meaning of "children" depends on the language of the testamentary instrument and the circumstances existing when it was executed); *Bolton v. Bolton*, 73 Me. 299, 309-10 (1882) (same). Accordingly, regardless of what meaning may be ascribed to the term "children" *today*, the plain language of the Trust does not indisputably establish whether, in 1907, Parsons intended to include *nonmarital* children as beneficiaries.

[¶49] The express rule of construction that appears in Paragraph 28 of the Trust also does not unambiguously resolve the question at issue here. Paragraph 28 states:

> The laws of the State of Maine shall apply to and govern the validity, construction and operation of this agreement, except as the construction or legal effect of this instrument is expressly stated in the provisions of the deed itself, and all matters, things and proceedings now or hereafter arising or had hereunder.

By using the phrase "laws of the State of Maine," Parsons did not distinguish between statutes and common law, and he could reasonably have been

31

referring to either.[14]  Applying the statutes and common law in effect during Parsons's lifetime, however, leads to competing conclusions as to whether he intended to include nonmarital children in the gift to the "issue" of his deceased descendants.

[¶50]  The statutes in effect in 1907 included a provision that allowed an "illegitimate child" to inherit property from his or her biological mother who died intestate.  R.S. ch. 77, § 3 (1903).[15]  Accordingly, if the phrase "laws of the State of Maine" is construed to mean *statutory* law, and if the 1907 statutes of descent can reasonably be analogized to trusts, then the language of the Trust reasonably allows the conclusion that Parsons intended to *include* nonmarital children within the meaning of the terms "issue" and "descendants."

---

[14]  In other places in the Trust, Parsons referred to statutory law specifically.  For example, in Paragraph 8, Parsons expressly rejected the definition of "per stirpes" provided "under the statutes of distribution in the State of Maine."  The phrase "laws of the State of Maine" could therefore reasonably be construed to be broader than the reference to the "statutes of distribution" in Paragraph 8 of the Trust and include the common law.

[15]  R.S. ch. 77, § 3 (1903) provided in full,

> An illegitimate child born after March twenty-four, in the year of our Lord one thousand eight hundred and sixty-four, is the heir of his parents who intermarry.  And any such child, born at any time, is the heir of his mother.  And if the father of an illegitimate child adopts him or her into his family, or in writing acknowledges before some justice of the peace or notary public, that he is the father, such child is also the heir of his or her father.  And in each case such child and its issue shall inherit from its parents respectively, and from their lineal and collateral kindred, and these from such child and its issue the same as if legitimate.

[¶51]　Cases decided during Parsons's lifetime, however, reveal a general common law principle that although nonmarital children were entitled to "take under any disposition by deed or will adequately describing them," they were *not* entitled to participate in gifts to "issue" or "children." 2 Thomas Jarman, *A Treatise on Wills* 205 (5th ed. 1881); *see also Bolton*, 73 Me. at 311 (explaining that nonmarital children "are not objects of a gift to children or issue of any other degree, unless a distinct intention to that effect be manifest upon the face of the will; and if by possibility, legitimate children alone would have satisfied the terms of such gift, illegitimate children cannot take" (quotation marks omitted)); *Lyon v. Lyon*, 88 Me. 395, 406, 34 A. 180 (1896) ("[W]here legacies or devises are given to a 'child,' or 'children' of some person named . . . these words mean, prima facie, legitimate children . . . ."); *Hall v. Cressey*, 92 Me. 514, 516, 43 A. 118 (1899) ("The authorities are to the effect that the word 'child' in a will or deed means a legitimate child.") The presumptive, common law meaning of "issue" therefore did not comport with 1907 statutory law, and leads to a different conclusion as to Parsons's intent.

[¶52]　Because the rule of construction prescribed in Paragraph 28 of the Trust can lead to opposite results depending on whether it is read to

invoke statutes or common law presumptions, I conclude that the record supports competing inferences as to whether Parsons intended to include nonmarital children as beneficiaries of the Trust. The summary judgment process therefore is not the appropriate means to resolve this dispute. This is true even if there is no additional evidence beyond what is contained in the summary judgment record that could be presented at a trial on remand. *See Rose v. Parsons*, 2015 ME 73, ¶ 4, 118 A.3d 220 ("Summary judgment process is not a substitute for trial . . . . When facts or *reasonable inferences to be drawn from the facts* are in dispute, the court must engage in fact-finding, and summary judgment is not available.") (emphasis added). Accordingly, I would vacate the summary judgment entered in favor of Gourevitch and remand for a trial so that the court can determine the most persuasive among the parties' competing views of historical facts and conclusions to be drawn from those factual disputes.

---

Deborah M. Mann, Esq. (orally), and Brendan P. Rielly, Esq., Jensen Baird Gardner & Henry, Portland, for appellant David Gourevitch

Dennis J. O'Donovan, Esq. (orally), and Jennifer L. Kruszewski, Esq., Epstein & O'Donovan, LLP, Portland, for appellee Thomas Maxwell